**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Bradley Edward MOSER, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 1, 2000.
Filed July 25, 2000.

---

James R. Wilson, Pittsburgh, for appellant.

Kevin F. McCarthy, Asst. Dist. Atty., Pittsburgh, for Com.

Before DEL SOLE, EAKIN and TODD, JJ.

DEL SOLE, J.:

¶ 1 Appellant pled guilty to receiving stolen property, possession of an instrument of crime, conspiracy, criminal attempt, burglary, theft, and various Motor Vehicle Code violations. He was sentenced to two consecutive terms of 18 to 36 months' imprisonment. This direct appeal followed.[1] We affirm.

¶ 2 Appellant contends that plea counsel ineffectively advised him to plead guilty despite the existence of a meritorious suppression claim. In order to set aside the plea, Appellant must show: (1) the existence of constitutionally infirm incriminating evidence; (2) that his guilty plea was primarily motivated by such evidence; and (3) that he was incompetently advised by counsel to plead guilty rather than stand trial. *Commonwealth v. Marsh*, 460 Pa. 253, 333 A.2d 181 (1975). In order to establish the first prong of this test, Appellant refers to the police report which has been made part of the certified record by stipulation. We have thus extracted the following facts from that report.

¶ 3 At approximately 3:15 a.m., Appellant and his co-defendant were stopped by police for driving with their high beams on, a violation of the Motor Vehicle Code.[2] Appellant, who was driving, produced a valid driver's license but the registration card he showed the officer was for a different car and the insurance card was ex-

---

1. Although the trial court appointed counsel for an appeal, a Notice of Appeal was not timely filed. Thereafter, the court granted Appellant's Petition to Reinstate Appellate Rights and appointed present counsel to pursue a direct appeal *nunc pro tunc*.

2. 75 Pa.C.S.A. § 4306

pired. Michael Nicholson, the passenger, had no identification. Nicholson told the officer the car belonged to his girlfriend. While Sergeant Huffman did a computer check on the car, Officer Lape asked Appellant for a current insurance card. At this time he observed a crowbar and gloves on the floor of the back seat. Neither Appellant nor his passenger gave any reason why they had a crowbar in the back seat. The officers also noticed that the trunk was secured by a bungy cord. When they asked why, the two responded they didn't know. The officers then asked for permission to look in the trunk and were told that the car belonged to Nicholson's mother. Sergeant Huffman then contacted Debra Nicholson, who verified that the car was hers and advised the officers that her son was using the car to go all-night bowling. After speaking with her son, Debra Nicholson gave the officers permission to look in the trunk. Sergeant Huffman advised her that written consent would be preferable and she said she would be there as soon as possible. At approximately 4:45 a.m., Debra Nicholson arrived, signed a written consent form, and the officers searched the car. In the trunk was a variety of merchandise, all bearing Family Dollar price tags. Both Appellant and Nicholson stated they did not have receipts for any of this merchandise. Sergeant Huffman then notified dispatch to see if any Family Dollar Store had been burglarized. Millvale Police Department responded that their Family Dollar Store had been burglarized that night. Appellant and Nicholson were then transported to the police station.

¶ 4 Appellant concedes that the initial stop was justified because of the Motor Vehicle Code violation. He claims, however, that the officers could do no more than issue a citation and allow Appellant and his passenger to be on their way.

¶ 5 In support of his claim, Appellant relies on those cases which hold that, in the absence of other indicia of criminal activity, an officer who stops a motorist for a traffic violation cannot, after examining the driver's papers and issuing a citation or warning, detain a driver who provides a valid license and registration. *See, e.g., Commonwealth v. Lopez*, 415 Pa.Super. 252, 609 A.2d 177 (1992). The facts of the present case, however, are significantly different. First, neither Appellant nor his passenger could produce a valid registration or insurance card for the car. They first told the officer the car belonged to Nicholson's girlfriend then that it belonged to Nicholson's mother. Nicholson was unable to produce any identification. As neither Appellant nor Nicholson was able to show that they either owned or had permission to drive the vehicle, the police were certainly justified in checking further to be sure the car was not stolen. *See Commonwealth v. Rogers*, 741 A.2d 813 (Pa.Super.1999) (incomplete title papers in a name different from driver's license, driver's evasiveness and nervousness, and presence of open detergent and fabric softener boxes which are commonly packaged with drugs to mask their odor sufficient to warrant further detention and investigation).

¶ 6 Moreover, the presence of a crowbar and gloves in the back seat and a trunk that was apparently so full it had to be held down with a bungy cord, the evasiveness of Appellant and Nicholson as to who owned the car and where they were going, and the time of night also gave the officers reasonable suspicion that criminal activity was afoot.

¶ 7 Appellant's complaint that he was detained for an hour and a half before the police actually searched the car does not alter our result. The key factor in determining if a detention lasts too long to be justified as an investigative stop is whether the police acted diligently to confirm or dispel their suspicions. *Commonwealth v. Ellis*, 541 Pa. 285, 662 A.2d 1043 (1995). Here, the police promptly contacted Debra Nicholson to determine if Appellant and his passenger had permission to

use the car. During this phone call, Debra Nicholson spoke to her son then gave the officers permission to search the car. The only delay resulted from waiting for Debra Nicholson to arrive at the scene so the officers could obtain her written consent to search the vehicle.

¶ 8 We conclude that Appellant did not have a meritorious suppression issue and counsel's advice to that effect was sound. Thus, Appellant has not met the first prong of the *Marsh* test and is not entitled to have his plea set aside.

¶ 9 Judgment of sentence affirmed.

