J-S37041-18

2018 PA Super 233

| IN THE INTEREST OF: M.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.W. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1784 EDA 2017 |

Appeal from the Dispositional Order May 9, 2017
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-JV-0000662-2017

BEFORE:   OLSON, J., McLAUGHLIN, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.:                    **FILED AUGUST 27, 2018**

Appellant M.W. appeals from the dispositional order entered by the Court of Common Pleas of Philadelphia County Juvenile Division.  Appellant asserts that the lower court erred in denying his suppression motion.  After careful review, we affirm.

On April 5, 2017, at approximately 1:40 p.m., Philadelphia Police Officer Thomas Seymour and his partner, Officer Harris, were on patrol in the 14th District when they observed a 2004 Chevrolet Impala drive through a stop sign at the intersection of Walnut Lane and McCallum Street.  The driver continued to travel above the posted speed limit on Walnut Lane and made a quick turn onto Green Street.  After the officers followed the vehicle and were unable to search the license number, the officers initiated a traffic stop.

Once Officer Seymour and Officer Harris exited the patrol car, Officer Seymour approached the driver's side of the vehicle with his hand on his

_____

*   Former Justice specially assigned to the Superior Court.

weapon and Officer Harris approached the passenger side with her weapon drawn. The driver of the vehicle, seventeen-year old Appellant, complied with the officers' direction to stick his hands out of the window. The officers described Appellant as being cooperative with their requests.

Upon further investigation, Appellant admitted he did not have a driver's license and did not produce registration for the vehicle. Thereafter, the officers asked Appellant to exit the vehicle and patted him down; the frisk did not reveal any weapons. While Officer Harris searched the vehicle's information on the computer database, Officer Seymour restrained Appellant in handcuffs and placed him in the back of the patrol car. Officer Seymour asserted that he told Appellant that he was being detained so the officers could determine the ownership of the car.

Thereafter, the officers learned through a computer database search that the license plate on the 2004 Impala had been last issued to a 1992 Chevrolet; they also noticed that the VIN number on the dashboard of the Impala did not match the VIN number on the inside driver's door. Appellant gave Officer Harris a false name and a false birthdate, and denied having any identification on his person. Appellant informed Officer Harris that the vehicle's documentation was in the glove compartment of the vehicle.

Officer Seymour subsequently opened the glove compartment, in which he discovered a Ziploc bag containing fourteen plastic jars of marijuana. The officers also determined that the vehicle was not registered but the title was in the name of Ms. Evelyn Jackson who lived in the 14th District. Appellant

stated that he was not related to Ms. Jackson and did not provide any explanation as to why he was driving this vehicle. At that point, the officers informed Appellant that he was under arrest.

As a result, Appellant was charged with intentionally possessing a controlled substance and driving without a license. Appellant sought to suppress the marijuana seized from the vehicle as he asserted it was fruit of an unlawful detention unsupported the requisite suspicion. After a hearing on April 17, 2017, the lower court denied Appellant's suppression motion. The trial court stated its factual findings on the record, essentially accepting the testimony of the officers; however, the trial court offered no legal analysis on the issues raised in the suppression motion. At the conclusion of the hearing, the lower court adjudicated Appellant delinquent, entered a dispositional order for Appellant to remain in secure detention at the Philadelphia Juvenile Justice Center, and directed that Appellant be placed in residential facility best suited to his treatment, supervision, rehabilitation, and welfare.

After Appellant filed a timely appeal, the trial court did not order Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), but instead filed a short opinion in which it suggested it should have granted Appellant's suppression motion and asked

this Court to remand the case accordingly.[1]  The trial court did not give any explanation as to why it believed its prior decision was in error.

The sole issue on appeal is whether the trial court erred in denying Appellant's motion to suppress the marijuana that the officers seized from the vehicle that Appellant was driving.  Our standard of review is as follows:

> This Court is bound by those of the suppression court's factual findings which find support in the record, but we are not bound by the court's conclusions of law.  When the suppression court's specific factual findings are unannounced, or there is a gap in the findings, the appellate court should consider only the evidence of the prevailing suppression party ... and the evidence of the other party ... that, when read in the context of the entire record, remains uncontradicted.

***Commonwealth v. Millner***, 585 Pa. 237, 246, 888 A.2d 680, 685 (2005) (citations omitted).

Appellant does not contest the legality of the stop of his vehicle, but argues that the marijuana obtained from the vehicle must be suppressed as the fruit of an illegal search and seizure.  Specifically, Appellant challenges the officers' protective frisk of his person and their decision to place him in handcuffs in the back of the patrol vehicle once they discovered he was driving without a license in an unregistered vehicle.   Appellant asserts that the officers did not have the authority to place him under arrest for the conduct of driving without a license, which is a summary offense.

---

[1] We note that "a trial court can only speak through its **orders**—and that any reasoning contained in a Rule 1925(a) opinion is advisory, and for the benefit of this Court only." ***Youst v. Keck's Food Serv., Inc.***, 94 A.3d 1057, 1079 (Pa.Super. 2014) (emphasis in original) (citation omitted).

The Commonwealth argues that Appellant cannot successfully challenge the search of the vehicle as he failed to show a legitimate expectation of privacy in the area searched. Alternatively, the Commonwealth contends that the officers had probable cause to seize the vehicle after initiating a lawful stop, learning that Appellant had no driver's license, and discovering that the vehicle was unregistered and had a mismatched license plate and differing VIN numbers on the driver's door and dashboard. Thus, the Commonwealth argues that the officers had probable cause to seize the vehicle and to conduct a reasonable inventory search, which included opening the vehicle's glove compartment to find documents that could help the officers determine who owned the vehicle.

In his reply brief, Appellant argues that he was not required to demonstrate a reasonably cognizable expectation of privacy in the vehicle as the officer's discovery of marijuana in the vehicle constituted the fruit of an illegal seizure of his person. Appellant cites *Commonwealth v. Shabezz*, ____Pa.____, 166 A.3d 278, 287 (2017), in which our Supreme Court held that "evidence derived from an illegal automobile search constitutes fruit of the poisonous tree as a result of the illegal seizure (unless the taint is removed), and that no further demonstration of a privacy interest in the area from which the evidence was seized is required by the Fourth Amendment." Appellant asserts the marijuana seized from the vehicle in this case was a direct product or exploitation of an illegal seizure of his person and must be suppressed.

Even assuming, *arguendo,* that Appellant was not required to demonstrate an expectation of privacy in the vehicle, we cannot find Appellant was entitled to the suppression of the marijuana found in the glove compartment as Appellant failed to show that he was subjected to an illegal search or seizure.

Appellant concedes that the officers were justified in stopping his vehicle as they observed Appellant drive through a stop sign, which is a violation of the Motor Vehicle Code. Appellant also admits that that he told the officers that he did not have a driver's license and could not produce any personal identification or registration for the vehicle. *See* 75 Pa.C.S.A. § 6308(a) ("The operator of any vehicle or any pedestrian reasonably believed to have violated any provision of this title shall stop upon request or signal of any police officer and shall, upon request, exhibit a registration card, driver's license and information relating to financial responsibility, or other means of identification").

Moreover, Appellant does not dispute that the officers had the authority to ask Appellant to get out of the vehicle and to detain him to continue to investigate the ownership of the vehicle. "As a matter of precaution, a police officer is entitled to ask occupants of a vehicle to step from the vehicle during a traffic stop." ***Commonwealth v. Van Winkle***, 880 A.2d 1280, 1285 (Pa.Super. 2005) (citing ***Commonwealth v. Freeman****,* 563 Pa. 82, 757 A.2d 903 (2000) (citing ***Pennsylvania v. Mimms****,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977))). ***See also Commonwealth v. Moser***, 757 A.2d 377,

379 (Pa.Super. 2000) (finding officers who had initially stopped a vehicle for a traffic violation, were entitled to continue to detain the occupants to see if the vehicle was stolen given that neither the driver nor the passenger could show that they owned or had permission to drive the vehicle).

In claiming that he was subsequently subjected to an illegal search and seizure when he was frisked, handcuffed, and placed in the back of the police cruiser, Appellant suggests that there is a bright line rule that an individual has been arrested at the moment he is placed in handcuffs or any restraint. However, Appellant does not address our precedent that suggests otherwise.

This Court has held that an officer's use of handcuffs to detain an individual during an investigative detention for his or her safety does not necessarily escalate the encounter into a custodial arrest. ***Commonwealth v. Rosas***, 875 A.2d 341 (Pa.Super. 2005), *appeal denied*, 587 Pa. 691, 875 A.2d 341 (2006) (citing ***Commonwealth v. Guillespie***, 745 A.2d 654, 660-61 (Pa.Super. 2001) (finding the officer's decision to handcuff suspects during an investigatory detention "was merely part and parcel of ensuring the safe detaining of the individuals during the lawful ***Terry*** stop" and did not constitute an arrest). Our Supreme Court has also declined to hold that an arrest occurs every time the police place an individual in handcuffs. ***Commonwealth v. Carter***, 537 Pa. 233, 247, 643 A.2d 61, 67, n.2 (1994). Rather, this Court has defined an arrest as:

> [a]ny act that indicates an intention to take the person into custody and subjects him to the actual control and will of the person making the arrest.... The test is an objective one, *i.e.,*

> viewed in the light of the reasonable impression conveyed to the person subjected to the seizure rather than the strictly subjective view of the officers or the persons being seized.

*Rosas*, 875 A.2d at 348–49.

In *Rosas*, this Court concluded that the officers did not subject Rosas to a custodial arrest when they ordered him out of his vehicle and placed him in handcuffs. Based on the totality of the circumstances, this Court found Rosas could not have reasonably believed that he was under arrest after the valid traffic stop given that the officers expressly told him that he was being detained to find out Rosas's true identity and to determine his connection to the vehicle when Rosas did not have a driver's license, any form of identification, insurance, or registration for the vehicle.

Likewise, in this case, after the officers discovered Appellant was driving without a driver's license or any form of identification in an unregistered vehicle, the officers did not indicate that Appellant was under arrest but instead informed Appellant he was being detained at that point for the purpose of discovering who owned the vehicle Appellant was driving or whether the vehicle was stolen. N.T. 4/21/17, at 11, 30. Although Appellant was subjected to a protective frisk for the officers' safety, placed in handcuffs, and detained in the back of the police vehicle, we cannot conclude that M.W. reasonably believed that he had been placed in custodial arrest when the officers were attempting to determine his true identity and his connection to the vehicle he was driving.

After further investigation, the officers discovered that (1) the license plate on the 2004 Chevrolet Impala that Appellant was driving was last issued to a 1992 Chevrolet and (2) the Vehicle Identification Number (VIN) on the vehicle's dashboard did not match the VIN number on the inside driver's door of the vehicle.[2]  At that point, the officers were justified in seizing the vehicle due to the tampered VIN number.  Section 7105 of the Vehicle Code provides the following:

> **(a) Duty of police.--**Every police officer having knowledge of a vehicle on which the vehicle identification number has been removed or falsified shall immediately seize and take possession of the vehicle and arrest or file a complaint for the arrest of the suspected owner or custodian. In all actions involving seizure or possession of such vehicles, vehicle identification information shall be transmitted to the Federal or other agencies involved in recovery of stolen vehicles.

---

[2] Appellant does not challenge the officers' authority to inspect the vehicle to determine the VIN numbers located on the dashboard and the driver's door of the vehicle he was driving.  We need not review the propriety of this action as any such challenge is waived.  Pa.R.A.P. 302 ("[i]ssues not raised in the lower court are waived").

However, this Court has acknowledged precedent from other jurisdictions finding that "the examination of a vehicle for the purpose of inspecting the VIN plates or identification-number inscriptions is not a search for purposes of the Fourth Amendment," provided there are "legitimate reasons to suspect criminal activity [is] afoot." **Commonwealth v. Grabowski**, 452 A.2d 827, 831–32 (Pa.Super. 1982) (quoting **United States v. Forrest**, 620 F.2d 446, 454-55 (5th Cir. 1980)). **See also People v. Wolf**, 60 Ill.2d 230, 326 N.E.2d 766, *cert. denied,* 423 U.S. 946, 96 S.Ct. 361, 46 L.Ed.2d 280 (Ill. 1975) (if an officer has reasonable suspicion of criminal activity, his examination of a VIN, by opening a door is a reasonable search, if a search at all); **Wood v. State**, 632 S.W.2d 734 (Tex.Cr.App. 1982) (finding officer's act of opening a car door to view a VIN, when the officer is legitimately on the property where the car is parked, is not a search within the Fourth Amendment; and if it were a search, it would be a reasonable one).

75 Pa.C.S.A. § 7105.

As the officers were permitted to "immediately seize and take possession of the vehicle" and arrest or file a complaint against Appellant as the suspected custodian, their subsequent search of the glove compartment to find documents pertaining to the ownership of the vehicle was part of a valid inventory search. Our courts have thoroughly summarized the law relevant to inventory searches as follows:

> inventory searches are a well-defined exception to the warrant requirement of the Fourth Amendment and are a recognized part of our law:
>
>> it is reasonable for police to search the personal effects of a person under lawful arrest as part of the routine administrative procedure at a police station house incident to booking and jailing the suspect. The justification for such searches does not rest on probable cause, and hence the absence of a warrant is immaterial to the reasonableness of the search. Indeed, we have previously established that the inventory search constitutes a well-defined exception to the warrant requirement. **See South Dakota v. Opperman**, [428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976)].
>
> An inventory search is not designed to uncover criminal evidence. Rather, its purpose is to safeguard the seized items in order to benefit both the police and the defendant. We have recognized inventory searches in the two areas of automobiles and booking procedures. **See** [**Commonwealth v. Scott**, 469 Pa. 258, 365 A.2d 140, 144 (1976)]; **Commonwealth v. Daniels** [474 Pa. 173], 377 A.2d 1376 (Pa. 1977).
>
> Four goals underlie such searches. First, they protect the defendant's property while he is in custody; second, police are protected against theft claims when defendants are given their property upon release; third, they serve to protect the police from physical harm due to hidden weapons; and fourth, **when necessary they ascertain or verify the identity of the**

**defendant.** Intrusions into impounded vehicles or personal effects taken as part of the booking process are reasonable where the purpose is to identify and protect the seized items.

As long as **the search is pursuant to the caretaking functions of the police department,** the conduct of the police will not be viewed as unreasonable under the Constitution. *See Scott*, 365 A.2d at 144.

*Commonwealth v. Gatlos*, 76 A.3d 44, 55–56 (Pa.Super. 2013) (quoting

*Commonwealth v. Nace*, 524 Pa. 323, 571 A.2d 1389, 1391 (1990))

(emphasis in original)).

Moreover,

[this] Court has observed that "two factors must be present in order to justify the reasonableness of an inventory search in the absence of probable cause. The Commonwealth must show: (i) that the vehicle in question was lawfully within the custody of the police, and (2) that the search was in fact an inventory search pursuant to the objectives laid down in [*Opperman*]" *Commonwealth v. Germann*, [423 Pa.Super. 393], 621 A.2d 589, 594 (Pa.Super. 1993), *citing Commonwealth v. Brandt* [244 Pa.Super. 154], 366 A.2d 1238 (Pa.Super. 1976). The Court, in *Commonwealth v. Germann, supra,* observed further that "'motive' is the sole factor which distinguishes a criminal investigatory search from a noncriminal inventory search of an automobile." *Id.* at 595, *citing United States v. Abbott,* 584 F.Supp. 442 (W.D.Pa. 1984).

*Gatlos*, 76 A.3d at 55–56 (quoting *Commonwealth v. Collazo,* 654 A.2d

1174, 1177 (Pa.Super. 1995)).

In *Collazo*, officers placed the appellant under arrest for possessing a controlled substance with intent to distribute after they observed the appellant sell a confidential informant sixteen packs of heroin in exchange for prerecorded buy money. After arresting the appellant, the officers sought to impound his vehicle. Although the appellant asserted he owned the vehicle,

it was registered to another individual and the vehicle's VIN number was illegible. The officers then searched the vehicle's glove compartment for the registration papers of the owner and discovered a packet of heroin with the same label that appeared on the heroin that the appellant had sold the informant.

On appeal, this Court found the officers had conducted a valid inventory search when they opened the vehicle's glove compartment:

> It is clear that the vehicle which had been operated by appellant was lawfully seized and impounded by police. Under 75 Pa.C.S. § 3352(c)(3), police could remove to a garage or place of safety any vehicle found after "the person driving or in control of the vehicle is arrested for an alleged offense for which the officer is required by law to take the person arrested before the issuing authority without unnecessary delay." 75 Pa.C.S. § 3352(c)(3). Here, the vehicle had been seized by police after appellant's arrest for selling heroin to the informant. The motive for the subsequent search of the vehicle was solely to identify its owner and not to uncover evidence of crime. The search, therefore, was within the caretaking function of the police, and, as such, was properly conducted without a warrant.

*Collazo*, 654 A.2d at 1177.

Likewise, in the instant case, the officers lawfully seized Appellant's vehicle pursuant to 75 Pa.C.S.A. § 7105 as they had reason to believe that the vehicle's VIN number had been altered after observing differing VIN numbers on the vehicle's dashboard and driver's door. Similar to *Collazo*, the officers' motive for searching the glove compartment was solely to identify the owner of the vehicle and not to uncover evidence of a crime. As a result,

the officers lawfully conducted a proper inventory search in opening the glove compartment.

Moreover, even if we were to accept Appellant's claim that the officers did not have the authority to frisk Appellant and place him in the back of the patrol car after discovering he was driving without a license in an unregistered vehicle, we reject Appellant's suggestion that the marijuana seized from the vehicle should have been suppressed as fruit of the poisonous tree. Our Supreme Court has fully summarized the relevant law as follows:

> Evidence of any kind obtained by police through an unlawful search may not be used in any respect, including as evidence at trial against the subject of the search. [**Wong Sun v. United States**, 371 U.S. 471, 484-85, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963));] **Silverthorne Lumber Co. v. United States**, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319 (1920). Such evidence may only be used against the defendant "[i]f knowledge of [the evidence] is gained from an independent source," **Silverthorne Lumber Co.**, 251 U.S. at 392, 40 S.Ct. 182, or "the evidence in question would inevitably have been discovered without reference to the police error or misconduct," **Nix v. Williams**, 467 U.S. 431, 448, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). The burden of proof is on the prosecution to establish by a preponderance of the evidence that the evidence illegally obtained would have ultimately or inevitably been discovered by legal means. **Id.** at 444, 104 S.Ct. 2501.
>
> "The exclusionary remedy for illegal searches and seizures extends not only to the direct product of the illegality, the primary evidence, but also to the indirect product of the search or seizure, the secondary or derivative evidence." *Tainted evidence subject to exclusion—Secondary or derivative evidence: Fruit of poisonous tree, Searches and Seizures, Arrests and Confessions* § 3:4 (2d ed.). The test to determine whether derivative evidence constitutes the fruit of an illegal search is not simply whether police would not have discovered the information but for the search, as derivative evidence may nonetheless be usable and admissible if the connection between the information obtained was

sufficiently attenuated from the illegal search, thus removing the taint of the original illegality. **Wong Sun**, 371 U.S. at 487–88, 83 S.Ct. 407; **United States v. Crews**, 445 U.S. 463, 471, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980). To determine whether evidence must be excluded as the fruit of an unlawful search, courts must consider "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality." **Wong Sun**, 371 U.S. at 488, 83 S.Ct. 407 (quoting Maguire, Evidence of Guilt, 221 (1959) ); quoting **Shabezz**, 166 A.3d at 289 ("The inquiry simply is whether the evidence was obtained via exploitation of the initial illegality"); **see also Nix**, 467 U.S. at 443, 104 S.Ct. 2501 ("the prosecution is not to be put in a better position than it would have been in if no illegality had transpired" but "the derivative evidence analysis ensures that the prosecution is not put in a worse position simply because of some earlier police error or misconduct"). "In applying this test, a court must evaluate whether the illegal search or any leads gained from the search tended to significantly direct the government toward discovery of the specific evidence being challenged." *Searches and Seizures, Arrests and Confessions* § 3:4.

**Commonwealth v. Fulton**, ____Pa.____, 179 A.3d 475, 489–90 (2018).

In this case, even if we assume that the officers subjected Appellant to an illegal frisk and arrest, the officers did not recover the marijuana from the glove compartment by exploiting the initial illegality as the officers were justified in continuing to detain Appellant to determine the vehicle's ownership. Appellant admitted he did not have a driver's license, failed to produce any form of personal identification or registration for the vehicle, and the vehicle itself had a mismatched license plate and conflicting VIN numbers.

Thus, as discussed above, once the officers discovered the conflicting VIN numbers, they had the right to seize the vehicle and conduct a reasonable inventory search of the glove compartment. This search would have led to the discovery of the marijuana regardless of whether the illegal frisk and arrest

had occurred. Appellant has not demonstrated how the officers' frisk and action in handcuffing Appellant and placing him in the patrol car necessarily yielded the evidence in question. Based on the foregoing reasons, we find no error in the lower court's decision to deny Appellant's suppression motion.[3]

Dispositional order affirmed.

Judge McLaughlin joins the Opinion.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/27/18

---

[3] Appellant also suggests that his adjudication of delinquency was unlawful as the charge of driving without a license is a summary offense that does not qualify as a "delinquent act" under the Juvenile Act. **See** 42 Pa.C.S.A. § 6302. However, as the lower court properly denied Appellant's suppression motion and found Appellant had committed the offense of simple possession of a controlled substance, which does qualify as a "delinquent act," the adjudication of delinquency was proper.