**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| OMAR SAUNDERS | : | |
| | : | |
| Appellant | : | No. 2192 EDA 2021 |

Appeal from the Judgment of Sentence Entered September 28, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000208-2021

BEFORE: BOWES, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.: **FILED DECEMBER 13, 2022**

Omar Saunders appeals from the judgment of sentence of three and one-half to seven years of incarceration imposed after the trial court convicted him of three violations of the Uniform Firearms Act. We affirm.

On November 18, 2020, Philadelphia Police Officer Matthew Ibbotson was patrolling in the high crime area of the 2500 block of West Indiana Avenue in the city of Philadelphia with his partner, Officer Washington.[1] *See* N.T. Suppression Hearing, 5/20/21, at 7-11. At 6:55 p.m., he spotted an illegally parked silver Honda vehicle with heavily tinted windows. *Id*. at 8-11-12. As he drove closer, the vehicle pulled out in front of him, making a right turn onto Indiana Avenue without utilizing a turn signal. *Id*. Accordingly,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Officer Washington's full name does not appear in the certified record.

Officer Ibbotson initiated a traffic stop for three violations of the Motor Vehicle Code: illegal parking, unlawfully tinted windows, and failure to use a turn signal.[2] *Id*. The vehicle immediately pulled over.

Officer Ibbotson approached the vehicle, found that Appellant was the sole occupant, informed him of the above-described traffic code violations, and requested his license and proofs of registration and insurance. *Id*. at 12. Appellant asked for permission to retrieve his license from his pocket, which Officer Ibbotson granted after Appellant stated that he did not have any weapons in the vehicle. *Id*. at 12-13. Believing that Appellant had no weapons in the vehicle, Officer Ibbotson told Appellant that "he [could] move about the car and get the documents that [he] asked him for." *Id*. at 13. At this time, Appellant reached over with his right arm to the glove box area while simultaneously dropping his left arm down by his feet and moving it in a motion that led the officer to believe that Appellant was "pushing something." *Id*. at 14. In response, Officer Ibbotson repositioned himself to the front of the car, where he shined his flashlight through the windshield. *Id*. at 13, 28. From this vantage point, Officer Ibbotson observed the handle of a gun protruding from under Appellant's seat, next to Appellant's left hand. *Id*. at 15, 28.

---

[2] Officers Ibbotson and Washington were both wearing body cameras, which captured their entire interaction with Appellant. This footage was introduced as Commonwealth exhibits during the suppression hearing. *See* N.T. Suppression Hearing, 5/20/21, at 18-23, 31.

Since Appellant had misled the officers about the presence of the firearm in the vehicle and his left hand had been observed next to it, Officer Ibbotson became concerned for his and his partner's safety. *Id*. at 16. Accordingly, he used a hand signal to warn his partner about the risk while asking Appellant to turn off and exit the vehicle. *Id*. Once Appellant complied, Officer Ibbotson frisked Appellant, placed him in handcuffs, and retrieved Appellant's license from his wallet. *Id*. After Appellant was handcuffed, Officer Ibbotson asked him if he had a firearm permit. *Id*. at 29-30. Appellant responded that he did not, and the officers placed Appellant in the back of their vehicle "for officer safety" while they continued their investigation. *Id*. at 17, 23. Officer Ibbotson retrieved the loaded black Taurus PT840 40-caliber handgun from Appellant's vehicle. The officer also ran a check to confirm that Appellant did not have a firearm permit, which also led to the discovery that the weapon was stolen. *Id*. at 24, 29-30. As a result of these findings, Officer Ibbotson placed Appellant under arrest and charged him with possession of a firearm prohibited, carrying a firearm without a license, and carrying a firearm on a public street in Philadelphia.

On April 16, 2021, Appellant filed an omnibus pretrial motion seeking suppression of the firearm on the grounds that the evidence was obtained in violation of his United States and Pennsylvania constitutional rights. *See* Omnibus Motion, 4/16/21, at 1. On May 20, 2021, the trial court held a hearing on the motion. Before any evidence was introduced, the trial court instructed defense counsel to state the grounds for his motion. In response,

trial counsel cited to **Commonwealth v. Alexander**, 243 A.3d 177 (Pa. 2020), arguing "that the officers did [not] have reasonable suspicion to pull the car over, that the stop was prolonged, and that under the line of cases the officer did not have the legal justification to reach into the car and seize the firearm at the time that he did."[3]  N.T. Suppression Hearing, 5/20/21, at 6. Officer Ibbotson testified consistently with the above summarized facts.

At the conclusion of the hearing, defense counsel argued that the warrantless search was illegal pursuant to **Alexander** since there were no exigent circumstances established.  **Id**. at 33-37.  When questioned about the applicability of the plain view exception to the warrant requirement, defense counsel claimed that post-**Alexander**, the plain view exception no longer gave officers permission to conduct warrantless searches of vehicles absent exigent circumstances.[4]  **Id**. at 39-45.  The Commonwealth disputed defense counsel's interpretation of **Alexander**, contending that the plain view doctrine was

---

[3]  In **Commonwealth v. Alexander**, 243 A.3d 177 (Pa. 2020), our Supreme Court reaffirmed that the "Pennsylvania constitution requires both a showing of probable cause **and** exigent circumstances to justify a warrantless search of an automobile."  **Id**. at 181 (emphasis added).  In reaching this conclusion, the Court overruled **Commonwealth v. Gary**, 91 A.3d 102 (Pa. 2014), which adopted the federal automobile exception to the warrant requirement in Pennsylvania, allowing police to conduct a warrantless vehicle search based solely on probable cause with no exigency required.

[4]  The plain view doctrine allows the admission of evidence seized without a warrant when:  (1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating, and (3) the officer has lawful right of access to the object.  **See Commonwealth v. Collins**, 950 A.2d 1041, 1045 (Pa.Super. 2008) (*en banc*).

unaffected by that holding. *Id*. at 56. In the Commonwealth's view, the requirements of the plain view exception were met, and the weapon was lawfully recovered. *Id*. at 56-57. The trial court continued the hearing so that both sides could submit case law and briefs. Appellant submitted a brief reiterating the arguments he made at the hearing. *See* Letter Brief, 6/14/21, at 2-8.

On June 17, 2021, the trial court reconvened the suppression hearing and denied the suppression motion, explaining that it found Officer Ibbotson's testimony credible and that it agreed with the Commonwealth that *Alexander* did not alter the plain view exception to the warrant requirement. *See* N.T. Suppression Hearing, 6/17/21, at 4-6, 8. Applying the plain view exception to the warrant requirement, the trial court held that the firearm was legally retrieved since Officer Ibbotson observed the contraband in plain view from a lawful vantage point. *Id*. at 8.

On August 3, 2021, Appellant proceeded to a non-jury trial, at which he was convicted of the aforementioned firearms offenses. On September 28, 2021, Appellant was sentenced to an aggregate sentence of three and one half to seven years of imprisonment. This timely appeal followed. Both Appellant and the trial court complied with the mandates of Pa.R.A.P. 1925.

Appellant raises the following issue for our review: "Did not the trial court err in denying Appellant's motion to suppress a firearm that was (1) the fruit of an illegal arrest and (2) seized from Appellant's car without a warrant

where there were no exigent circumstances or right of access?" Appellant's brief at 3.

In his first claim, Appellant contests the legality of his arrest, contending he was illegally placed under arrest the moment he exited the vehicle and was placed in handcuffs. *See* Appellant's brief at 12. Since the investigation into the legality of Appellant's possession of the firearm continued after he exited the vehicle, Appellant contends that the officers arrested him before they obtained the necessary probable cause to justify the arrest. *Id*. at 15-16. Relying on ***Commonwealth v. Hicks***, 208 A.3d 916 (Pa. 2019), Appellant contends that Appellant's possession of a firearm alone was insufficient to justify arresting Appellant.[5] *Id*. at 14. Meanwhile, the Commonwealth contends that Appellant's first argument is waived, since he argued that he was subject to an illegal arrest for the first time on appeal. ***See*** Commonwealth's brief at 7. We are constrained to agree with the Commonwealth.

_____

[5] In ***Commonwealth v. Hicks***, 208 A.3d 916 (Pa. 2019), our Supreme Court held that because a firearm may lawfully be carried and, alone, is not suggestive of criminal activity, police officers may not infer criminal activity solely from an individual's possession of a concealed firearm in public. The Court explained that possession of a firearm should be but one factor considered under the totality of the circumstances presented. *Id*. at 939-40. However, ***Hicks*** did not involve an otherwise valid traffic stop during which the officers observed a firearm in plain view immediately after the defendant had claimed not to possess such a weapon. Instead, the ***Hicks*** Court reviewed the possession of a firearm as an antecedent justification for a valid stop. *Id*. at 934.

It is well-established that "issues not raised in the lower court are waived and cannot be raised for the first time on appeal."  Pa.R.A.P. 302(a).  This rule applies equally to appellants who raise "a new and different theory of relief for the first time on appeal."  **Commonwealth v. McFalls**, 251 A.3d 1286, 1293 (Pa.Super. 2021).  Our review of the certified record confirms that Appellant did not present the suppression court with an argument that the officers obtained his firearm through an illegal arrest.  Accordingly, he raised this theory of relief for the first time on appeal and it is waived.  **See Commonwealth v. Prizzia**, 260 A.3d 263, 270-71 (Pa.Super. 2021) (finding a suppression theory waived where the appellant failed to raise it in her pretrial motions or at the suppression hearing.).[6]

_____

[6] Even if properly preserved, Appellant's argument that because he was handcuffed, he was under arrest, would not entitle him to relief.  It is undisputed that Appellant was asked to exit the vehicle in the midst of a lawful traffic stop.  **See** Appellant's brief at 10 ("Appellant was subjected to a lawful traffic stop").  It is well-established that officers may direct the movements of the driver or occupants of a vehicle during a valid traffic stop.  **See Commonwealth v. Wright**, 224 A.3d 1104, 1109 (Pa.Super. 2019).  Herein, the officers continued to investigate the firearm after Appellant exited the vehicle, frisking him to retrieve his driver's license and insuring whether he could lawfully possess a firearm.  Thus, Appellant was initially subjected to an investigative detention that escalated to an arrest after the officers learned that Appellant could not legally possess the recovered firearm.  **See Commonwealth v. Rosas**, 875 A.2d 341, 349 (Pa.Super. 2005) (holding that the defendant was not under arrest despite the officer handcuffing him, informing him he was suspected of illegal activity, and moving him away from his vehicle because the officer was still investigating Appellant's identity.).

Furthermore, "an officer's use of handcuffs to detain an individual during an investigative detention for his or her safety does not necessarily escalate the encounter into a custodial arrest."  **Interest of M.W.**, 194 A.3d 1094, 1099

*(Footnote Continued Next Page)*

In his second claim, Appellant relies upon **Alexander** to attack the trial court's application of the plain view exception to the warrant requirement. **See** Appellant's brief at 19-22. Appellant acknowledges that, in **Commonwealth v. McMahon**, 280 A.3d 1069, 1074 (Pa.Super. 2022), we recently rejected the precise claim he advances by holding that **Alexander** did not supplant the plain view exception for automobiles. **See** Appellant's Reply Brief at 2-3. Appellant nonetheless suggests that we should overrule or overlook this binding precedent and apply **Alexander** as requiring the Commonwealth to demonstrate exigent circumstances before invoking the plain view exception in the context of automobile searches. **Id**. at 6-13. Meanwhile, the Commonwealth contends that **McMahon** is directly on point and should control our analysis of this issue. **See** Commonwealth's brief at 18-21. We agree with the Commonwealth.

In **McMahon**, police officers encountered the defendant on a routine patrol. **McMahon**, **supra** at 1070. Both officers were aware that the defendant did not possess a valid driver's license. **Id**. at 1070-71. Consequently, they conducted a traffic stop of defendant. **Id**. at 1071. As they approached the vehicle, the officers smelled marijuana emanating from

_____

(Pa.Super. 2018) (concluding that no arrest occurred where the defendant was frisked, handcuffed, and placed in the back of a police cruiser while police investigated if he was driving a stolen vehicle). Herein, the officers were concerned for their safety and continued to investigate the firearm after Appellant exited the vehicle, frisking him to retrieve his driver's license and insuring whether he could lawfully possess a firearm. Thus, Appellant was also initially lawfully detained due to valid safety concerns. **Id**.

the vehicle and observed what they believed were two burnt marijuana cigarettes in the center cupholder. *Id*. The defendant was removed from the car, initially detained, and later arrested after a search of the vehicle yielded three bags of marijuana in the center console. *Id*.

The defendant filed an omnibus pretrial motion to suppress and the trial court granted his motion with regard to the drugs seized from the center console pursuant to *Alexander*. *Id*. at 1072. However, the trial court denied suppression of the marijuana cigarettes, determining that the items were found in plain view. *Id*. The defendant was convicted and appealed the denial of his suppression motion. *Id*. Relying on *Alexander*, the defendant contended that the trial court erroneously applied the plain view doctrine because the Commonwealth did not establish that any relevant exigency applied. We disagreed and affirmed the trial court's order, finding that *Alexander* addressed the automobile exception to the warrant requirement and did not involve the plain view exception. *Id*. at 1073-74. After reviewing the application of the plain view exception to the facts, we concluded that the trial court correctly determined that the police had a lawful right of access to the marijuana cigarettes and the seizure was lawful. *Id*. at 1074.

Herein, Appellant advances the same argument that we rejected in *McMahon*, that *Alexander* imported an exigency requirement into the plain view doctrine. *See* Appellant's brief at 22-27. Accordingly, *McMahon* controls and no relief is due on Appellant's second issue. *See Commonwealth v. Harris*, 269 A.3d 534, 539 (Pa.Super. 2022) ("a prior

published opinion issued by a panel of this Court constitutes binding precedential authority"); *see also Commonwealth v. Beck*, 78 A.3d 656, 659 (Pa.Super. 2013) ("A panel [of this Court] is not empowered to overrule another panel of the Superior Court.") (citation omitted).

Appellant also argues that the Commonwealth failed to establish the requirements of the plain view exception. *See* Appellant's brief at 22. We find this argument unavailing. In order for an item to be seized by law enforcement pursuant to the plain view doctrine it must satisfy three criteria: (1) the police must be at a lawful vantage point, (2) the incriminating nature of the object must be immediately apparent, and (3) the police must have a lawful right of access to the object. *See Commonwealth v. Collins*, 950 A.2d 1041, 1045 (Pa.Super. 2008) (*en banc*).

Appellant does not dispute the first two prongs of the plain view test. *See* Appellant's brief at 23 n. 6 ("Appellant here does not dispute that the first two prongs were met"). Accordingly, we find that the evidence established that the officer viewed the firearm from a lawful vantage point during a valid traffic stop and that the incriminating nature of the firearm was immediately apparent. *See* N.T. Suppression Hearing, 5/20/21, at 12-13, 15-16. With regard to the final prong, we find that the officer had a lawful right to access the interior of Appellant's vehicle after Appellant lied about the presence of the firearm, was observed attempting to hide it, and admitted that he did not possess a valid firearm permit. *Id*. at 16-17. These factors combined to create probable cause suddenly and without any advance warning that

- 10 -

Appellant or his car would be the target of a police investigation. *See McMahon*, *supra* at 1074 (finding the officer had the lawful right of access to the marijuana cigarettes observed in plain view where Appellant was under arrest and the officers had no "advance notice and opportunity to obtain a warrant" since they observed the drugs while in the midst of conducting a valid traffic stop). Therefore, since Officer Ibbotson "lacked advance notice and an opportunity to obtain a warrant" before commencing a search, he had a lawful right of access to the interior of Appellant's vehicle to recover the evidence that was lying in plain view and, thereby, secure officer safety. *Id*.; *see also Commonwealth v. Smith*, ____ A.3d ____, 2022 Pa. Super. 187, 2022 WL 16704701 (Pa.Super. November 4, 2022) (applying *McMahon* and finding the plain view exception applied where, following a motor vehicle stop, a firearm was observed and retrieved from the back seat of the defendant's car).

Consistent with the foregoing, we conclude that the seizure of the firearm was lawful. Thus, the trial court did not err when it denied suppression of the firearm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/13/2022</u>