J-A28035-22

2023 PA SUPER 48

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
NATHANIEL ROY LEWIS :
:
Appellant : No. 1055 EDA 2022

Appeal from the Judgment of Sentence Entered March 14, 2022
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-000542-2019


COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
NATHANIEL ROY LEWIS :
:
Appellant : No. 1584 EDA 2022

Appeal from the Judgment of Sentence Entered March 14, 2022
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-000547-2019


BEFORE:  PANELLA, P.J., LAZARUS, J., and SULLIVAN, J.

OPINION BY PANELLA, P.J.:                    **FILED MARCH 23, 2023**

The justice system in America is a distinctive system which requires cooperation among diverse professionals and entities who have, at times, conflicting goals but a united responsibility – a fair and just trial.  This case demonstrates how unethical conduct by an attorney disrupts the integrity of the criminal justice system and causes the corruption of the criminal trial

process. The Appellant's original choice for defense counsel, Lauren Wimmer, Esq., engaged in conduct that offended the trial court's expectations of the ethical and vigorous advocacy required from a member of the Bar of Pennsylvania. Her actions put the wheels in motion for the unfortunate, and regrettable outcome that a new trial is required. This is necessary although we must sympathize with the frustration of the trial court in having to address this issue and the anger of the prosecution after it learned of her actions. However, as always, it is the application of the law which determines the appropriate appellate decision and not the personal outrage which results from the conduct of counsel.

In this case, Nathaniel Roy Lewis appeals from the judgment of sentence entered after a jury convicted him of two counts of attempted homicide and related crimes arising from an incident where Lewis fired more than 30 rounds from a high-powered semi-automatic rifle at members of the Chester County Emergency Response Team ("CCERT"). Prior to trial, the trial court disqualified Lewis's chosen counsel based on allegations she had leaked portions of footage from CCERT team leader Detective Paul Trautmann's body camera to national media and further, had made public statements impugning Detective Trautmann's credibility on a television broadcast. Lewis contends the trial court violated his Sixth Amendment right to counsel by disqualifying his counsel. We agree, and therefore vacate his judgment of sentence and remand for a new trial.

For purposes of this appeal, Lewis does not dispute the following summary of the evidence at trial. *See* Appellant's Brief, at 2-7. In the evening of December 25, 2018, Lewis barricaded himself in his residence. CCERT was summoned to the scene and communicated with Lewis in an effort to get him to surrender. Shortly after midnight, Lewis began shooting out of his residence. Over the next six hours, Lewis fired at least 30 shots, including several that struck an armored vehicle operated by CCERT. Just after 7 a.m., Lewis left his residence and surrendered to CCERT members.

The Commonwealth subsequently charged Lewis with 12 counts of attempted homicide, 24 counts of aggravated assault, 21 counts of recklessly endangering another person, two counts of possessing an instrument of crime, and one count of institutional vandalism. Lewis was appointed a public defender, but quickly became dissatisfied with counsel. On April 25, 2019, Lewis privately retained Attorney Wimmer to represent him in this matter.

For over a year, this case proceeded through discovery and other pre-trial matters. Then, as the case neared trial in early July 2020, CBS News broadcast two segments based on this case. First, CBS News aired footage from a body camera worn by a CCERT officer which revealed members of CCERT suggesting, outside of Lewis's presence, that Lewis commit suicide. This recording had been produced to Attorney Wimmer during discovery, but CBS News credited Lewis's family for the recording. Second, CBS News aired

an interview with Attorney Wimmer that commented on the professionalism of the prosecuting police officer, Detective Trautmann.

On July 14, 2020, the Commonwealth filed a motion in limine, seeking, among other requests discussed more fully below, to disqualify Attorney Wimmer from the case. The court held a hearing the next day, and after hearing testimony from Assistant District Attorney Myles Matteson, disqualified Attorney Wimmer. Lewis retained new counsel, and over a year later, in September 2021, a jury convicted Lewis of two counts of attempted homicide, 13 counts of aggravated assault, seven counts of recklessly endangering another person, two counts of possessing an instrument of crime, two counts of criminal mischief, one count of terroristic threats, and one count of institutional vandalism. In early 2022, the trial court imposed a sentence of 27½ to 57 years in prison. This timely appeal followed.

In his single issue on appeal, Lewis challenges the disqualification of his chosen counsel, Attorney Wimmer. We apply a plenary standard of review to Lewis's claim. *See Darrow v. PPL Electric Utilities Corp.*, 266 A.3d 1105, 1111 (Pa. Super. 2021). While the Commonwealth contends the proper standard of review is for abuse of discretion, we note that the authorities relied upon by the Commonwealth deal with alleged conflicts of interest between a district attorney's office and an alleged victim. *See Commonwealth v. Lutes*, 793 A.2d 949, 955 (Pa. Super. 2002); *Commonwealth v. Stafford*, 749 A.2d 489, 494 (Pa. Super. 2000). A prosecutor is not counsel for an

alleged victim. *See Commonwealth v. Price*, 684 A.2d 640, 642 (Pa. Super. 1996). Therefore, *Lutes* and *Stafford* are distinguishable.

We begin our analysis by reiterating that while this appeal necessarily focuses on Attorney Wimmer's actions, it is Lewis's constitutional right to counsel that is at stake. It is axiomatic that a criminal defendant has an absolute right to counsel under the Sixth Amendment of the Constitution of the United States and Article I, Section 9 of the Pennsylvania Constitution. *Commonwealth v. Moore*, 633 A.2d 119 (Pa. 1993), *cert. denied*, 513 U.S. 1114 (1995). Furthermore, Lewis has a constitutional right to "a fair opportunity to secure counsel of his own choice." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). Specifically, the Sixth Amendment to the United States Constitution "commands, not that a trial be fair, but that a particular guarantee of fairness be provided – to wit, that the accused be defended by the counsel he believes to be best." *See id.*, at 146. If Lewis's right to proceed with counsel of his choosing were violated, he is entitled to a new trial as prejudice is presumed. *See id.*, at 144.

That right is not unconstrained, however. *See id.* Reasonable limits based on the interests of justice can override Lewis's desires. The most obvious example of such a limit is the requirement that, other than by proceeding *pro se*, Lewis cannot choose an attorney that is not licensed and in good standing, or otherwise admitted to practice law in the Commonwealth of Pennsylvania. *See*, *e.g.*, *Powell v. Unemployment Compensation*

*Board of Review*, 157 A.3d 884, 890-91 (Pa. 2017). Here, there is no indication in the record that Attorney Wimmer was not licensed or not in good standing in Pennsylvania. Instead, the trial court disqualified Attorney Wimmer based on its own finding that Attorney Wimmer had violated certain provisions of the Rules of Professional Conduct.

There is no question that the trial court possessed the power to disqualify Attorney Wimmer upon finding that she violated the Rules of Professional Conduct. *See Darrow*, 266 A.3d at 1111. However, that power was severely limited: "disqualification is appropriate only when both another remedy for the violation is not available and it is essential to ensure that the party seeking disqualification receives the fair trial that due process requires." *Id.*[1] Accordingly, we may affirm the order disqualifying Attorney Wimmer only if: (1) there was no other remedy available for her violations, and (2) there was no other way to ensure the Commonwealth's right to a fair trial.

To address both prongs, we must review the conduct the trial court found to be in violation of the Rules. First, the court found that Attorney Wimmer had made public statements on CBS attacking the prosecuting

---

[1] *Gonzalez-Lopez* arguably introduces some worry about how the second part of the *Darrow* test applies here. However, as we conclude that the Commonwealth failed to establish the requirements of the *Darrow* test, we do not reach the issue of whether *Gonzalez-Lopez* imposes a higher standard when the Commonwealth seeks to disqualify a criminal defendant's chosen counsel.

officer's character and credibility. **See** Trial Court Opinion, 6/13/22, at 11.[2] The court also found that Attorney Wimmer had published the body camera footage on CBS knowing that it would be inadmissible at trial. **See id.**, at 12. The court concluded that Attorney Wimmer's "actions fall squarely into the prohibited actions as enumerated in both Rule 3.6 … and the comments thereto[.]" **Id.**, at 11.

In general, Rule 3.6 prohibits lawyers involved in a case from making public statements that "have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter." Pa.R.P.C. 3.6. Further, the comment to the Rule clarifies that public statements regarding the character or credibility of a witness are "more likely than not to have a prejudicial effect on a proceeding." Pa.R.P.C. 3.6, cmt. Further, publication of prejudicial information about the case that would be inadmissible at trial is also clearly prohibited by the Rule. **See id.**

The trial court's factual findings are supported by the record. And Lewis has not made any serious attempt to challenge these findings on appeal. **See**

---

[2] The trial judge in this matter has since retired. The 1925(a) opinion was prepared by a different judge. Importantly, it is the retired trial judge's reasoning, and not the reasoning of the judge who prepared the 1925(a) opinion, which controls. **See In Interests of M.W.**, 194 A.3d 1094, 1097 n.1 (Pa. Super. 2018). However, our review of the 1925(a) opinion reveals that it accurately and correctly sets forth the reasoning utilized by the trial judge. We discern no conflict between the two analyses; rather, the 1925(a) opinion does no more than provide a thorough explanation of the trial judge's reasoning.

Appellant's Brief, at 11 ("True as it may be that Ms. Wimmer participated in unfortunate pretrial publicity about this case…"); ***see also*** N.T., 7/15/20, at 12 (counsel for Attorney Wimmer arguing "the right to counsel should outweigh whatever errors a young lawyer might have made in being a little too zealous in her representation.").

However, as noted above, that conclusion is not co-extensive with a conclusion that the trial court was empowered to override Lewis's choice of counsel. While a court may disqualify counsel for violations of the Rules of Professional Conduct, it cannot do so merely to punish counsel for the violation. ***See Estate of Pedrick***, 482 A.2d 215, 221 (Pa. 1984). The trial court does not have the general power to sanction attorneys pursuant to the Rules of Professional Conduct. ***See id.***; ***see also*** Pennsylvania Rules of Professional Conduct, Preamble and Scope, ¶ 19 ("The Rules are designed to … provide a structure for regulating conduct through disciplinary agencies."). Therefore, as noted above, the court could only disqualify Attorney Wimmer for a violation of the Rules if it were essential to protect the Commonwealth's right to a fair trial and no other remedy could accomplish the same result. ***See Darrow***, 266 A.3d at 1111.

Here, the trial court concluded that

[t]here is no question that the release of officer worn body cameras to CBS and [Attorney] Wimmer's interview with CBS placed the fairness and integrity of the defendant's trial undoubtedly in jeopardy. As succinctly stated, and adopted by this court, the [trial judge] found,

> [t]here's a lot more detail that I could get into, but essentially looking at the interest of justice and the disgraceful, unethical behavior of the attorney attempting to taint the jury pool by putting out irrelevant information that a jury would never see, and further by trying to scare the police into making a different offer, it is so over the top and outrageous that I am convinced that a fair jury trial can't [exist] with[Attorney] Wimmer in the case.

Trial Court Opinion, 6/13/22, at 13. The trial court concluded its reasoning by stating that it thought Attorney Wimmer's conduct had "influenced this case so much that [Attorney] Wimmer should no longer be a part of it." N.T., 7/15/20, at 58.

We find two sources of error in the trial court's explicit reasoning. First, the trial court's reasoning was focused primarily on Attorney Wimmer's past conduct. Such past-focused reasoning is an indicator of punitive intent. Second, the court's reasoning was focused on the outrageousness of Attorney Wimmer's conduct, not on whether Attorney Wimmer was likely to continue acting in ways that would prejudice the Commonwealth's right to a fair trial. In fact, the defense team agreed that the issues underlying the Commonwealth's motion to disqualify would be irrelevant at trial:[3]

_____

[3] Attorney Wimmer had counsel, Samuel Stretton, Esq., to represent her interests at the hearing on the Commonwealth's motion to disqualify. **See** N.T., 7/15/20, at 3 (Counsel stating "as you know, I'm here not as Mr. Lewis' attorney but as Ms. Wimmer's"). Attorney Wimmer was not a party to any matter relevant to the hearing, and the Rules prohibit counsel from acting as both advocate and witness in a proceeding. **See** Pa.R.P.C. 3.7. The Commonwealth had a second prosecutor acting as advocate at the hearing, allowing the former lead prosecutor, A.D.A. Matteson, to testify in support of
*(Footnote Continued Next Page)*

[Prosecutor:] There are three motions pending this morning.

The first motion is for an order – a continued order prohibiting pretrial statements pending trial. It's my understanding, Your Honor, there is no objection from the defense to Your Honor signing that order.

MS. WIMMER: That is correct, Your Honor.

MR. STRETTON: That is correct. Ms. Wimmer can speak for herself on that.

THE COURT: All right.

[Prosecutor:] Your Honor, the second motion is a motion in limine to exclude any information regarding the affiant or one of the officers in this case, … to exclude a 1998 unrelated incident as not being relevant to this case.

And the other aspect of that motion is the Commonwealth's motion to exclude any comments in the BearCat by unnamed officers and also Detective Trautmann as being not relevant in this case. My understanding is that there is an agreement with respect to that motion as well.

MR. STRETTON: That is correct. Your honor, we agree to it with the exception that if somehow a door would be opened up during trial – presumably it wouldn't be – then we would go to side bar and ask for you to reconsider. Other than that, we agree.

THE COURT: All right. Do you represent Mr. Lewis?

_____

the motion to disqualify. And A.D.A Matteson did not continue to act as an advocate in this matter after testifying. As demonstrated in the transcript of proceedings set forth more fully below, it is unclear whether the trial court appreciated the quandary Attorney Wimmer faced at this hearing: testify in her defense, thereby disqualifying herself from further advocacy in this matter under Rule 3.7, or allow the Commonwealth to present the only evidence of record regarding one-on-one conversations between herself and A.D.A. Matteson. This hearing demonstrated many of the dangers the Rules of Professional Conduct seek to avoid by reserving disciplinary proceedings for a separate venue.

MR. STRETTON:  No. I represent his attorney.

THE COURT:  All right. Well, this is about Mr. Lewis. I'm going to ask that you be quiet, please.

MR. STRETTON:  All right.

MS. WIMMER:  Judge, that is correct as Mr. Stretton stated. I have no objection to the Commonwealth's motion unless and until one of the witnesses opens the door to its admission or something relevant in the BearCat, at which time it would be an evidentiary ruling for trial.

THE COURT:  All right. But at this point you would agree that none of it was relevant?

MS. WIMMER:  Your Honor, I – for purposes of the motion, yes, I would agree that none of it is relevant at this stage of the proceedings.

N.T., 7/15/20, at 5-7.

Therefore, before the motion to disqualify was addressed, Attorney Wimmer had agreed not to make any more public statements about the case, and further, that evidence of the prosecuting officer's disciplinary history, as well as the body camera footage, were not relevant at trial unless the Commonwealth presented testimony that made them relevant. These issues therefore could not have been valid bases for the trial court to conclude that disqualification was essential to preserve the Commonwealth's right to a fair trial.

The trial court also opined that disqualification was necessary as otherwise, Attorney Wimmer would be subject to "some personal vendetta or personal desire to prove her own innocence and avoid any other collateral

consequences." N.T., 7/15/20, at 57. However, we cannot find any basis in the record to support this conclusion. There was no evidence, beyond the Commonwealth's allegation that it planned on filing a disciplinary complaint, that disciplinary proceedings had been initiated.[4] And the Commonwealth's complaint, if it were ever actually filed, would not, on its own, be sufficient grounds to disqualify Attorney Wimmer. To hold otherwise would give every adverse party the power of veto in the choice of counsel merely by filing a disciplinary complaint against an opposing attorney. Further, given that Attorney Wimmer had conceded that the evidence at issue was, in fact, irrelevant absent an intervening circumstance, there was nothing for Attorney Wimmer to "prove" regarding her own innocence or lack thereof. Finally, bad feelings between opposing advocates, however unfortunate, are a fact of the adversarial system. What matters is not whether the advocates dislike each other, but whether they perform their professional duties in a civil manner. On that note, there is no evidence showing that Attorney Wimmer or the Commonwealth could not fulfill their professional duties going forward.

While the trial court did not explicitly conclude that Attorney Wimmer had tainted the jury pool, we note for the sake of completeness that the record

---

[4] In **Commonwealth v. Selenski**, No. 904 MDA 2015, 2016 WL 5745642 (Pa. Super. filed August 11, 2016) (unpublished memorandum), **appeal denied**, 156 A.3d 334 (Pa. 2017), we affirmed the trial court's decision to disqualify defense counsel. However, aside from being non-precedential, that case is factually distinguishable because there, defense counsel had already been criminally charged for actions taken while representing the defendant.

does not support such a finding. Pretrial publicity must be inflammatory in nature and sustained and pervasive in the local community in order to justify a presumption that jurors cannot perform their duties fairly and impartially. *See Commonwealth v. Walter*, 119 A.3d 255, 269 (Pa. 2015). Whether or not the CBS television segments were inflammatory, we fail to see how the two broadcasts on one station in the local community qualified as sustained and pervasive. In any event, during jury selection before the trial, only one potential juror indicated they had previous knowledge of the case:

> JUROR NO. 43:  I feel like I did read something about this when it first occurred. But that's all I can recall.
>
> THE COURT:  And would it interfere with your ability to try the case fairly and impartially?
>
> JUROR NO. 43:  No, because I can't recall as much as I …
>
> THE COURT:  Very good. Thank you.

N.T., 9/13/2021, at 54-55.

In sum, we conclude that the record does not support the trial court's conclusion that disqualification of Attorney Wimmer was necessary to protect the Commonwealth's fair trial rights. Lewis's Sixth Amendment rights to private counsel of his choosing cannot be overborne under these circumstances. As this constitutes a structural error, we are therefore required to vacate the judgment of sentence and remand for a new trial.

Judgment of sentence vacated. Case remanded for a new trial. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 3/23/2023*