Commonwealth *v.* Weyman, Appellant.

Argued March 10, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Bruce E. Cooper*, with him *Charles E. Friedman*, and *Cooper, Friedman & Butler*, for appellant.

*J. Bozar*, Assistant District Attorney, with him *Kevin A. Hess*, Assistant District Attorney, and *Harold E. Sheely*, District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., April 22, 1975:

Appellant, convicted of conspiracy to violate §5513 of the Crimes Code,[1] contends that the lower court erred in limiting defense counsel's cross-examination of two witnesses and that the Commonwealth failed to prove appellant's guilt beyond a reasonable doubt.

On October 29, 1973, Sergeant Robert Smith, who headed the Crime Device section of the Pennsylvania

---

1. Act of Dec. 6, 1972, P.L. 1482, No. 334; 18 Pa.C.S. §5513.

State Police, executed a search warrant that authorized a search of Stejan Printing Company, owned and operated by one Stephen Zentmeyer, appellant's co-conspirator. Zentmeyer operated the company in his family's residence in Lower Allen Township, Cumberland County. The search netted 27,000 football lottery tickets and 15,000 blank forms for printing additional football tickets. After the search, Zentmeyer revealed that he had been printing similar tickets for appellant for several months.

Appellant was thereafter indicted for conspiracy to violate §5513 of the Crimes Code, supra, which prohibits gambling and operating a lottery. He was tried and found guilty on February 14, 1974, by a judge sitting without a jury. Appellant was sentenced to a term of one year's imprisonment and to pay a fine of $2000. Appellant's motions in arrest of judgment and for a new trial were denied on June 26, 1974. This appeal followed the denial of those motions.

Appellant's first contention is that the lower court erred in refusing to allow defense counsel to cross-examine Sergeant Smith as to the basis of the warrant which authorized the search of Zentmeyer's home. The lower court rejected appellant's claim because the court believed that appellant did not have standing to raise the issue and because appellant did not file a pre-trial motion to suppress as required by Pennsylvania Rule of Criminal Procedure 323 (b), thereby waiving the issue of the admissibility of the evidence. We cannot reach the merits of appellant's argument concerning his standing to challenge the search of his co-conspirator's home because the issue was in fact waived.

Rule 323 (b) provides that "Unless the opportunity did not previously exist, or the interests of justice otherwise require, such application [to suppress the admission of evidence] shall be made only after a case has been

returned to court and not later than ten days before the beginning of the trial session in which the case is listed for trial . . . . If timely application is not made hereunder, the issue of the admissibility of such evidence shall be deemed to be waived." There is no question that the appellant waived the issue unless his case is within one of the two exceptions to the rule. The first exception contemplates a situation in which defense counsel does not know of the existence of the evidence. See, e.g., *Commonwealth v. Williams,* 229 Pa. Superior Ct. 390, 323 A. 2d 862 (1974) ; Comment to Rule 323: ". . . the order of the judge determining admissibility is to be final and binding at trial, absent newly discovered and hitherto undiscoverable evidence." The appellant does not contend that his counsel was unaware of the evidence seized by the police.

The appellant alleges that the lower court erred in refusing to allow counsel to cross-examine the police sergeant concerning the legality of the search warrant. At the same time, however, appellant argues that the court at the time of trial was bound by our holding in *Commonwealth v. Smith,* 201 Pa. Superior Ct. 511, 193 A.2d 778 (1963), that "[i]n order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else." *Smith,* supra, at 516, 193 A. 2d at 780, citing *Jones v. United States,* 362 U.S. 257, 261 (1960). Appellant's counsel argues that he did not file a motion to suppress the physical evidence because under *Smith,* appellant had no standing. After trial, but before the appellant's brief was filed, the Supreme Court decided *Commonwealth v. Weeden,* 457 Pa. 436, 322 A. 2d 343 (1974), and we decided *Commonwealth v. Tasco,*

227 Pa. Superior Ct. 144, 323 A. 2d 831 (1974),[2] both of which appellant alleges liberalize rules for standing in criminal cases. Therefore, appellant contends that the interest of justice requires that we now consider the issue of standing to object to the search of the Zentmeyer residence.

Appellant's argument is superficially appealing. Under the law existing at the time of appellant's trial, however, his claim was at least arguable. For example, in *Commonwealth v. Rowe,* 433 Pa. 14, 249 A. 2d 911 (1969), the Court held that appellant had standing to challenge the search of the home of his co-felon's father. The search netted a pistol that belonged to the co-felon's father, but which police believed had been used by appellant and his co-felon to commit murder. Further, the facts of the *Smith* case, which appellant contends was controlling, are easily distinguished from those of the instant case: in *Smith,* the owner of the premises consented to the search of the premises, hence raising no serious question of an illegal search initially. Thus no valid reason appears for appellant's counsel's failure to file a pre-trial motion raising the issue of the legality of the search of the Zentmeyer home and seizure of the lottery tickets; therefore, the issue was waived under Rule 323.

In addition, appellant contends that "the charge against [appellant] was not brought until several weeks after Zentmeyer's arrest. This fact, along with the fact that at [appellant's] trial, Zentmeyer's testimony was the only evidence which linked appellant with the tickets, indicates that the police questioned Zentmeyer subsequent to his arrest, and that such questioning elicited statements from Zentmeyer which implicated appellant." In sum, appellant alleges that probable cause for appel-

---

2. Appellant's trial was held on February 14, 1974. The Supreme Court filed *Weeden* on July 1, 1974; we filed *Tasco* on April 3, 1974.

lant's arrest was founded on statements obtained illegally from Zentmeyer by the police. Appellant argues that he should have been permitted to cross-examine Zentmeyer on the issue. Because the issue goes to probable cause for arrest, it is properly raised in a pre-trial motion to suppress; because it was not so raised, the issue was waived under Rule 323, supra.

Finally, appellant contends that the evidence was insufficient to sustain his conviction. In determining whether the evidence is sufficient to prove appellant guilty beyond a reasonable doubt of the crimes charged, we must review the evidence in a light most favorable to the verdict winner. *Commonwealth v. Blevins*, 453 Pa. 481, 309 A. 2d 421 (1973). After a verdict of guilty, we must accept as true all of the evidence, direct or circumstantial, and all reasonable inferences arising from the evidence, upon which the trier of fact could properly have based the verdict. *Commonwealth v. Fortune*, 456 Pa. 365, 318 A. 2d 327 (1974).

At trial, Zentmeyer testified that in July of 1973, appellant contracted with him to print tickets, a sample of which was provided by appellant. Thereafter, Zentmeyer made several deliveries of the tickets. The State Trooper, Sergeant Smith, found over 25,000 lottery tickets. The sergeant, who had extensive experience and training in vice activity, identified the tickets as lottery tickets and explained the manner in which a lottery participant used the ticket. We agree with the lower court's conclusion that "[a]n examination of the tickets themselves, even to one of less experience than Sgt. Smith, leaves little doubt as to the exact nature of the ticket. Although the ticket had printed on the top the words, 'for amusement only,' the fact there were 27,000 of them was a pretty clear indication of the nature of the amusement. We encounter no difficulty in drawing the inference that the purpose of the seized tickets was for the operation of a football lottery."

The judgment of sentence is affirmed.