654 A.2d 1174

**COMMONWEALTH of Pennsylvania,**

v.

**Miguel COLLAZO, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 12, 1994.

Filed Feb. 24, 1995.

14

Robert D. O'Brien, Public Defender, York, for appellant.

Christy H. Fawcett, Asst. Dist. Atty., York, for Com., appellee.

Before WIEAND, HUDOCK and HESTER, JJ.

WIEAND, Judge:

Miguel A. Collazo was tried by jury and was found guilty of possession and delivery of a controlled substance. He was sentenced to serve a term of imprisonment for not less than six (6) years nor more than twelve (12) years. After post-sentence motions had been denied, Collazo filed this appeal in which he argues that the trial court committed reversible error by: (1) failing to suppress a packet of heroin found in the vehicle seized by police following his arrest; and (2) allowing improper hearsay testimony regarding a signal which was given by an informant to signify that a drug transaction had occurred. After careful review, we affirm the judgment of sentence.

On August 12, 1993, at or about 2:20 p.m., members of the York County Drug Task Force met with Jack Fisher, an informant, to finalize details for an undercover purchase of narcotics to be made by Fisher. He was searched by police to make certain that he had no drugs on his person, and he was then provided with $390 in bills whose serial numbers had been pre-recorded by the police. Fisher was instructed by police to drop the newspaper which he was carrying as a signal that the drug transaction had been completed. Fisher was then transported to a location near Thaxton Park in the City of York, where the drug transaction was to take place.

Fisher was observed constantly by members of the task force, who were concealed at various surveillance positions throughout the area. Shortly after Fisher entered the park, police observed appellant arrive in a black and silver Mercury automobile, which he parked nearby. Appellant entered the park, talked with Fisher briefly, and then returned to his vehicle, where he appeared to open the glove compartment. Appellant then returned to the park and again met with Fisher. Police observed appellant hand an object to Fisher, in return for which Fisher handed money to appellant; and when appellant walked away, Fisher dropped the newspaper. All members of the task force were immediately informed via

police radio, and appellant was apprehended. At that time police seized from appellant's person $330 of the pre-recorded currency which had been supplied to Fisher. After the transaction had been completed, Fisher gave police sixteen packets of heroin, together with the unused $60 in pre-recorded currency.

After appellant had been arrested, police seized the vehicle which he had driven to the park. The vehicle was transported to the Schaad Detective Agency, which had an impound lot used by the police to store seized vehicles. When appellant told police that he owned the vehicle but had registered it in another person's name, the police contacted Edward Gumper, an employee of the detective agency, and asked him to check the vehicle's identification number. When Gumper was unable to read the vehicle identification number, he looked inside the vehicle for an owner's card or registration papers. While doing so, he found a packet of heroin stamped "Full Power." This was the same label as appeared on the sixteen packets of heroin which Fisher had turned over to police after engaging in the transaction with appellant. Gumper informed police of his discovery, and they took possession of the evidence.

At trial, appellant objected to testimony by Gumper on grounds that Gumper had conducted an illegal warrantless search of appellant's vehicle. A lengthy side bar conference ensued, during which the court heard testimony and the arguments of counsel. At the conclusion thereof, the court held as follows:

All right. The Court refuses the motion to suppress, which, in effect, what the Court is treating that as at this late date, first of all, we find the issue has been waived by the failure of defense counsel to file a motion to suppress prior to trial; and secondly, find that this was a component of an inventory search, that as part of the inventory one would both determine what was in the vehicle, but would also determine who owned the vehicle, so that proper notification could be given to the person who owned the vehicle.

. . . .

And, therefore, we find that the heroin which was found was in plain view after the lifting up of the tray holding the papers, that was permissible for him to do so to attempt to find an owner's card and thereby determine the ownership of the vehicle, and, therefore, we refuse the motion to render that testimony inadmissible.

Trial Transcript at pp. 97–99.

■ Pa.R.Crim.P. 323 provides in pertinent part:

**Rule 323. Suppression of Evidence**

(a) The defendant or his attorney may make a motion to the court to suppress any evidence alleged to have been obtained in violation of the defendant's rights.

(b) Unless the opportunity did not previously exist, or the interests of justice otherwise require, such motion shall be made only after a case has been returned to court and shall be contained in the omnibus pretrial motion set forth in Rule 306. If timely motion is not made hereunder, the issue of suppression of such evidence shall be deemed to be waived.

It has been held, therefore, that the "failure to raise a suppression issue prior to trial preclude[s] its litigation for the first time at trial, in post-trial motions or on appeal." *Commonwealth v. Scaine,* 337 Pa.Super. 72, 75, 486 A.2d 486, 487 (1984). See also: *Commonwealth v. Smith,* 524 Pa. 72, 83–84, 569 A.2d 337, 342–343 (1990); *Commonwealth v. Schneider,* 386 Pa.Super. 202, 211, 562 A.2d 868, 872–873 (1989); *Commonwealth v. Wright,* 354 Pa.Super. 120, 122, 511 A.2d 217, 218 (1986); *Commonwealth v. Throckmorton,* 241 Pa.Super. 62, 66–67, 359 A.2d 444, 446–447 (1976). Instantly, appellant did not file a pre-trial suppression motion seeking to exclude the packet of heroin found in his vehicle. Therefore, "any objection to the admissibility of the evidence on constitutional grounds is deemed waived under Rule 323(b)." *Commonwealth v. Williams,* 454 Pa. 261, 263, 311 A.2d 920, 921 (1973). See also: *Commonwealth v. Johnson,* 484 Pa. 545, 553–554, 400 A.2d 583, 587 (1979) (Opinion in Support of Affirmance);

*Commonwealth v. Goggans,* 455 Pa. 606, 607–608, 317 A.2d 222, 223 (1974); *Commonwealth v. Duden,* 326 Pa.Super. 73, 88–89, 473 A.2d 614, 622 (1984); *Commonwealth v. Weyman,* 235 Pa.Super. 116, 118–121, 339 A.2d 78, 80–81 (1975), *cert. denied,* 423 U.S. 947, 96 S.Ct. 363, 46 L.Ed.2d 282 (1975); *Commonwealth v. Williams,* 230 Pa.Super. 259, 261, 326 A.2d 420, 421 (1974); *Commonwealth v. Porter,* 229 Pa.Super. 314, 320, 323 A.2d 128, 131 (1974); *Commonwealth v. Valle,* 227 Pa.Super. 191, 194, 323 A.2d 74, 76 (1974).

■ Moreover, appellant's belated suppression motion was clearly lacking in substantive merit. In *Commonwealth v. Nace,* 524 Pa. 323, 571 A.2d 1389 (1990), *cert. denied,* 498 U.S. 966, 111 S.Ct. 426, 112 L.Ed.2d 411 (1990), the Pennsylvania Supreme Court stated:

[I]nventory searches are a well-defined exception to the warrant requirement of the Fourth Amendment and are a recognized part of our law:

... it is reasonable for police to search the personal effects of a person under lawful arrest as part of the routine administrative procedure at a police station house incident to booking and jailing the suspect. The justification for such searches does not rest on probable cause, and hence the absence of a warrant is immaterial to the reasonableness of the search. Indeed, we have previously established that the inventory search constitutes a well-defined exception to the warrant requirement. See *South Dakota v. Opperman, supra* [428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) ].

An inventory search is not designed to uncover criminal evidence. Rather, its purpose is to safeguard the seized items in order to benefit both the police and the defendant. We have recognized inventory searches in the two areas of automobiles and booking procedures. See, *Scott; Commonwealth v. Daniels,* 474 Pa. 173, 377 A.2d 1376 (1977).

Four goals underlie such searches. First, they protect the defendant's property while he is in custody; second, police are protected against theft claims when defendants are given their property upon release; third, they serve to

protect the police from physical harm due to hidden weapons; and fourth, when necessary they ascertain or verify the identity of the defendant. Intrusions into impounded vehicles or personal effects taken as part of the booking process are reasonable where the purpose is to identify and protect the seized items.

As long as the search is pursuant to the caretaking functions of the police department, the conduct of the police will not be viewed as unreasonable under the Constitution. See [*Commonwealth v. Scott,* 469 Pa. 258 at 267, 365 A.2d 140 at 144. (1976) ]

*Id.* at 327–328, 571 A.2d at 1391. The Superior Court has observed that "two factors must be present in order to justify the reasonableness of an inventory search in the absence of probable cause. The Commonwealth must show: (i) that the vehicle in question was lawfully within the custody of the police, and (2) that the search was in fact an inventory search pursuant to the objectives laid down in [*South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).]" *Commonwealth v. Germann,* 423 Pa.Super. 393, 403, 621 A.2d 589, 594 (1993), citing *Commonwealth v. Brandt,* 244 Pa.Super. 154, 366 A.2d 1238 (1976). The Court, in *Commonwealth v. Germann, supra,* observed further that " 'motive' is the sole factor which distinguishes a criminal investigatory search from a noncriminal inventory search of an automobile." *Id.* at 404, 621 A.2d at 595, citing *United States v. Abbott,* 584 F.Supp. 442 (W.D.Pa.1984).

In the instant case, it is clear that the vehicle which had been operated by appellant was lawfully seized and impounded by police. Under 75 Pa.C.S. § 3352(c)(3), police could remove to a garage or place of safety any vehicle found after "[t]he person driving or in control of the vehicle is arrested for an alleged offense for which the officer is required by law to take the person arrested before an issuing authority without unnecessary delay." 75 Pa.C.S. § 3352(c)(3). Here, the vehicle had been seized by police after appellant's arrest for selling heroin to the informant. The motive for the subsequent search of the vehicle was solely to identify its owner and not to uncover

evidence of crime. The search, therefore, was within the caretaking function of the police, and, as such, was properly conducted without a warrant.

■ Several members of the Drug Task Force testified at trial about the informant's dropping of a newspaper as a signal that the drug transaction had been completed.[1] Appellant objected to the testimony on grounds that it was hearsay. The court overruled the objection. Appellant contends that this was error.

"A 'hearsay' statement is an out-of-court statement offered in court to prove the truth of the matter asserted." *Commonwealth v. Ballard*, 430 Pa.Super. 109, 114, 633 A.2d 641, 644 (1993). See also: *Commonwealth v. Smith*, 436 Pa.Super. 277, 285, 647 A.2d 907, 911 (1994); *Commonwealth v. Michaux*, 360 Pa.Super. 452, 461, 520 A.2d 1177, 1181 (1987). "[A] settled point of evidence law is the rule that out-of-court non-verbal conduct does constitute an extrajudicial declaration if it functions as a communication, and is therefore hearsay, if introduced to prove the truth of the fact asserted." *L.W.B. v. Sosnowski*, 117 Pa.Commw. 120, 126, 543 A.2d 1241, 1244 (1988) (en banc). See: Federal Rule of Evidence 801(a)(2) and (c); McCormick on Evidence, Volume 2, Ch. 24, § 250 (4th ed. 1992); Packel and Poulin, Pennsylvania Evidence, Ch. VIII, § 801 (1987). See also: *Commonwealth v. Rush*, 529 Pa. 498, 504–505, 605 A.2d 792, 795 (1992); *B.G. v. Commonwealth, Department of Public Welfare*, 132 Pa.Commw. 563, 566, 573 A.2d 672, 673 (1990); *G.W.K. v. Commonwealth, Department of Public Welfare*, 125 Pa.Commw. 512, 517–518, 558 A.2d 151, 153–154 (1989).

However, "[i]t is well-settled that an out-of-court statement offered to explain a course of conduct is not hearsay." *Commonwealth v. DeHart*, 512 Pa. 235, 254, 516 A.2d 656, 666 (1986), *cert. denied*, 483 U.S. 1010, 107 S.Ct. 3241, 97 L.Ed.2d 746 (1987). See also: *Commonwealth v. Brown*, 538 Pa. 410, 423, 648 A.2d 1177, 1183–1184 (1994); *Commonwealth v. Cruz*,

---

1. The informant did not testify at appellant's trial, as he had absconded and could not be found by police.

489 Pa. 559, 565, 414 A.2d 1032, 1035 (1980). The Superior Court has observed that:

This Court has repeatedly upheld the introduction of out-of-court statements for the purpose of showing that based on information contained in the statements, the police followed a certain course of conduct that led to the defendant's arrest. *Commonwealth v. Matthews,* 314 Pa.Super. 38, 460 A.2d 362 (1983) (out-of-court statement that contraband was in certain apartment and that Matthews had put it there); *Commonwealth v. Stewart,* 304 Pa.Super. 382, 450 A.2d 732 (1982) (contents of phone call to police from residence where victim's body discovered; defendant found leaving premises); *Commonwealth v. Ryan, supra* [253 Pa.Super. 92, 384 A.2d 1243 (1978)] (plurality opinion) (police radio calls referring to unrelated holdups); *Commonwealth v. Smith,* 250 Pa.Super. 436, 378 A.2d 1015 (1977) (allocatur refused), *cert. denied,* 439 U.S. 835, 99 S.Ct. 118, 58 L.Ed.2d 131 (1978) (declarant told officer he could place bets by calling defendant's telephone number); *Commonwealth v. Tselepis,* 198 Pa.Super. 449, 181 A.2d 710 (1962) (allocatur denied) (informant tip that defendant was conducting a lottery); *see also Commonwealth v. Sampson,* 454 Pa. 215, 311 A.2d 624 (1973) (alleged co-conspirator's denial of involvement offered to show why police **did not** arrest him); [*Commonwealth v. Lewis, supra,* 314 Pa.Super. 298, 460 A.2d 1149 (1983)] (admission of out-of-court statement that set wheels in motion for defendant's capture); *State v. McIntosh,* 635 S.W.2d 370 (Mo.Ct.App.1982) (phone call identifying defendant admitted to show course of conduct leading to her apprehension); *see generally* 6 J. Wigmore, **Evidence** §§ 1788–89 (Chadbourn rev. 1976) (declarations as circumstantial evidence).

*Commonwealth v. Underwood,* 347 Pa.Super. 256, 261, 500 A.2d 820, 822–823 (1985). See also: *Commonwealth v. Sneed,* 514 Pa. 597, 606–607, 526 A.2d 749, 754 (1987); *Commonwealth v. Rivera,* 409 Pa.Super. 120, 129–130, 597 A.2d 690, 695 (1991).

The Pennsylvania Supreme Court has cautioned that such course of conduct testimony must bear close scrutiny prior to being admitted into evidence. The Court said:

Nevertheless, it cannot be said that **every** out-of-court statement having bearing upon subsequent police conduct is to be admitted, for there is great risk that, despite cautionary jury instructions, certain types of statements will be considered by the jury as substantive evidence of guilt. Further, the police conduct rule does not open the door to unbounded admission of testimony, for such would nullify an accused's right to cross-examine and confront the witnesses against him.

. . . .

Clearly, there is need for a balance to be struck between avoiding the dangers of hearsay testimony and the need for evidence that explains why police pursued a given course of action. This balancing process is governed by the sound discretion of the trial court, and, as with other evidentiary decisions, the trial court's decision will be upheld on appeal unless there has been an abuse of that discretion. See *Commonwealth v. Hart,* 479 Pa. 84, 87, 387 A.2d 845, 847 (1978) (trial court's discretion on evidentiary rulings).

*Commonwealth v. Palsa,* 521 Pa. 113, 118–119, 555 A.2d 808, 810–811 (1989). See also: *Commonwealth v. Yates,* 531 Pa. 373, 375–377, 613 A.2d 542, 543–544 (1992); *Commonwealth v. Thomas,* 396 Pa.Super. 92, 101–104, 578 A.2d 422, 426–428 (1990).

Upon carefully reviewing the record in this case, we are satisfied that the trial court did not abuse its discretion or commit an error of law. Testimony by police that the informant had been instructed to give a signal when the drug transaction was consummated and that he dropped a newspaper, the agreed upon signal, was not introduced to prove that appellant had, in fact, sold heroin to the informant. Rather, it was introduced to explain the course of conduct followed by police when they moved in to apprehend the appellant and place him under arrest. The officers' testimony was based

upon their own personal knowledge of the instructions which had been given to the informant and the action of the informant which they had observed. The trial court, moreover, instructed the jury that it was to determine the meaning of the informant's dropping of the newspaper from all of the evidence in the case, and not merely conclude that a drug transaction had occurred because a pre-arranged signal had been given.[2] Under these circumstances, the trial court's evidentiary ruling regarding the informant's dropping of a newspaper was not error.

Having found no merit in the arguments advanced by appellant, the judgment of sentence is, as it must be,

Affirmed.

---

2. This instruction was given as follows:

THE COURT: It's up to the jury to determine whether there is sufficient testimony to indicate what Mr. Fisher was doing when he dropped the newspaper.

We understand there's testimony about the prearranged signal. The question is whether the dropping of the newspaper was in response to that agreement or whether there is some other explanation. Obviously, if he just dropped it because it slipped out of his hand, then it wouldn't be a signal.

So it's up to you to determine whether there's been sufficient testimony to show that his dropping of the newspaper was part of the prearranged signal that indicated that a drug buy had occurred. Trial Transcript at p. 125.