J-S21034-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| O'NEILL SAMUEL THOMPSON | : | |
| | : | |
| Appellant | : | No. 3388 EDA 2024 |

Appeal from the Judgment of Sentence Entered November 25, 2024
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0001667-2024

BEFORE:   KUNSELMAN, J., KING, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED SEPTEMBER 3, 2025**

O'Neill[1] Samuel Thompson appeals from the judgment of sentence, entered in the Court of Common Pleas of Montgomery County, after the trial court found him guilty of one count each of possession of a firearm by a prohibited person, driving under the influence – general impairment (first offense) ("DUI"), possession of marijuana, and possessing an instrument of crime – unlawful body armor ("PIC").[2] Thompson challenges the denial of his pre-trial motion to suppress physical evidence. For the reasons stated below, we amend the judgment of sentence to reflect a minimum imprisonment term

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Thompson's name appears in the record as both "O'Neil" and "O'Neill."

[2] 18 Pa.C.S. § 6105(a)(1), 75 Pa.C.S. § 3802(a)(1), 35 P.S. § 780-113(a)(16), and 18 Pa.C.S. § 907(c), respectively.

for Thompson's drug conviction and affirm the sentencing order in all other respects.

The trial court set forth the facts of this case as follows:

[O]n February 1, 2024, [Thompson] was driving in Lower Merion, Montgomery County under the influence of alcohol. He crashed into the backyard of [a residence in the 1400 block of] County Line Road and disabled his vehicle. [. . .]

Officer [Valentina] Joukhovitski [of the Lower Merion Township Police Department] was the first to respond [after receiving an emergency] call of a crash at that location. When she arrived, she observed damage to a stone pillar at the end of the driveway. She heard an engine revving and found [Thompson] in the driver's seat of a pickup truck. It was obvious to the officer that the truck was stuck in the mud, in the backyard of a residential house.

Officer Joukhovitski instructed [Thompson] repeatedly to turn off the vehicle. [Thompson] did not do that right away and continued to rev the engine. Eventually [Thompson] did turn the vehicle off. [Officer Joukhovitski] asked him for his keys, which [Thompson] gave her, and the officer put them on the hood of the car. [. . .] [During their interaction, Thompson] lied [to Officer Joukhovitski in] denying that he crashed into anything. Officer Joukhovitski observed visible evidence of the crash on the vehicle, consistent with hitting the stone pillar. [. . .]

[Thompson] produced his driver's license, and [Officer Joukhovitski] removed him from the truck. She was joined by [other officers, including Officer Angelo Edward Bove], who assisted her. Officer Joukhovitski walked [Thompson] up to the street for a field sobriety test. [Thompson] refused to do any tests that involved standing or walking due to [the condition of] his leg and only agreed to [submit to] the Horizontal Gaze Nystagmus test. [Thompson] failed that test. He was placed into custody for driving while intoxicated. [. . .]

The body cam[era] video depicted [Thompson] as argumentative, and he appeared to be heavily intoxicated. He was sometimes noncompliant, and he had lied to the police. [. . .]

[Officer Bove] stayed with the vehicle when Officer Joukhovitski took [Thompson] to the street for the [f]ield [s]obriety [t]est.

- 2 -

[At that time,] Officer Bove started the inventory search [of Thompson's vehicle]. It was apparent to him that [police] were not going to let [Thompson] drive [his truck away from that location] due to his intoxication. It was also apparent that either the police would have to drive the car or have it towed [to remove it] from the private property. A family lives at that property, [including] a husband, wife[,] and teenage child. It was not appropriate to leave the truck on the private property under those circumstances. [. . .]

During the inventory search, Officer Bove found a marijuana blunt in the driver's area and a bulletproof vest behind the driver's seat. He left the vehicle and told the other officers about th[e bulletproof vest], to make sure they properly checked [Thompson's person] for weapons. [Thompson] was arrested for [driving under the influence].

Officer Bove returned to the vehicle and continued the inventory search. He found a 9 mm handgun [in a backpack]. He was advised shortly thereafter that [Thompson] was a person not to possess a firearm. [. . .] The truck was towed to an impound lot, it was secured, and later a search warrant was obtained.

Officer [Damian] Evans was present for the search [pursuant to the warrant], and among the items seized was a Mossberg rifle, [Thompson]'s [identification documentation], and the ballistic vest.

Trial Court Opinion, 2/24/25, at 1-4 (citing N.T. Suppression Hearing/Stipulated Bench Trial, 9/6/24, at 5-16, 19-32, 63-67, 73-74).

On April 23, 2024, Thompson filed an omnibus pre-trial motion to suppress. He alleged that the arrest was illegal because it, *inter alia*, was made without a valid warrant or exigent circumstances and was the product of an illegal stop. **See** Omnibus Pre-trial Motion, 4/23/24, at 1-2. Further, Thompson alleged that the search of his truck and any resulting law enforcement observations were illegal because, among other things: (1) the search was not incident to a lawful arrest; (2) the scope of the search was

illegally broad; (3) the search was made without a warrant; (4) there were no exigent circumstances to justify a warrantless search; and (5) Thompson did not consent to the search. ***See id.*** at 2.

The court conducted a suppression hearing on September 6, 2024. The Commonwealth presented the testimonies of Officers Joukhovitski, Bove, and Evans, who each testified consistently with the above summary of facts. ***See generally*** N.T. Suppression Hearing, 9/6/24. Thereafter, the court denied Thompson's motion to suppress, and the case proceeded to a stipulated bench trial on September 6, 2024. The court found Thompson guilty of the above-mentioned crimes. On November 25, 2024, the court sentenced Thompson to eight to sixteen years' imprisonment for the firearms offense and lesser concurrent imprisonment terms for the remaining offenses.[3] ***See*** Order (sentencing), 11/25/24, at 1-3; N.T. Sentencing Hearing, 11/25/24, at 10. Thompson timely appealed, and he and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Thompson presents the following question for our review:

> Did the [suppression] court err in denying [Thompson]'s motion to suppress on the ground that all contraband recovered from [his] vehicle was the fruit of an illegal inventory search that was improperly conducted on-site when no exigent circumstances or public safety concerns existed to justify the search being

_____

[3] The concurrent imprisonment terms included forty-eight hours to six months for DUI, thirty days for possession of marijuana, and one and one-half to seven years for PIC. ***See*** Order (sentencing), 11/25/24, 1-3; N.T. Sentencing Hearing, 11/25/24, 10.

performed before the vehicle had been towed and stored or impounded?

Appellant's Brief, at 3.

First, Thompson claims that his truck was not lawfully towed and stored nor impounded before the police initiated a search of the vehicle. *Id.* at 12. Thompson relies on our Supreme Court's decision in *Commonwealth v. Lagenella*, 83 A.3d 94 (Pa. 2013), to point out that police may only conduct a warrantless inventory search of a vehicle where they "have lawfully towed and stored or impounded the vehicle." Appellant's Brief, at 12 (quoting *Lagenella*, 83 A.3d at 106). Thompson notes that Officer Bove's testimony does not reference any exigent circumstances that would justify a premature search. *Id.* at 15-16.

Thompson identifies three decisions, *Commonwealth v. Hennigan*, 753 A.2d 245 (Pa. Super. 2000), *Commonwealth v. West*, 937 A.2d 516 (Pa. Super. 2007), and *Commonwealth v. Brinson*, 328 A.3d 1096 (Pa. Super. 2024), where this Court determined that the Commonwealth failed to demonstrate that the police conducted a proper inventory search. *See* Appellant's Brief, at 12-15. Thompson relies on these cases to show that inventory searches must be conducted pursuant to reasonable, standard police procedures. *Id.* In particular, Thompson notes that this Court opined that it is the Commonwealth's burden "to demonstrate the particulars of that policy and to show the search was done in accordance therewith." *Id.* (quoting *West*, 937 A.2d at 529).

Further, in relying on **Florida v. Wells**, 495 U.S. 1 (1990), Thompson argues that when evidence is recovered during an inventory search from a container—such as the firearm found within his backpack—within a vehicle, police must explain the specific department policy pertaining to the search of such a container. **See** Appellant's Brief, at 15.

Thompson takes issue with the timing of the inventory search and notes that the Lower Merion Police Department's policy regarding inventory searches does not indicate any circumstances where an inventory search should be conducted before a vehicle is impounded. **See id.** at 16-17. Furthermore, Thompson argues that the policy provides no guidance regarding the search of a container found inside the vehicle. **Id.** at 17-18. Pursuant to **Wells**, Thompson concludes that the search of the backpack within the car was "insufficiently regulated" and therefore illegal. Appellant's Brief, at 18. We disagree.

Our standard of review from the denial of a motion to suppress is well-established:

> [the appellate] standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

***Commonwealth v. Yandamuri***, 159 A.3d 503, 516 (Pa. 2017) (citations and footnote omitted). We may affirm the suppression court's decision if there is any basis in the record to support it, even if we rely on different grounds to reach the same result. ***See Commonwealth v. Cartagena***, 63 A.3d 294, 301 (Pa. Super. 2013) (*en banc*). Moreover, "[i]t is within the suppression court's sole province as fact finder to pass on the credibility of witnesses and the weight to be given their testimony." ***Commonwealth v. Baker***, 946 A.2d 691, 693 (Pa. 2008) (citation omitted).

Both the United States and Pennsylvania Constitutions protect citizens from unreasonable police searches and seizures:

> The Fourth Amendment to the United States Constitution[4] and Article I, Section 8 of the Pennsylvania Constitution[5] protect

_____

4 The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. Amend. IV.

5 The Pennsylvania Constitution states:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without

*(Footnote Continued Next Page)*

citizens from unreasonable searches and seizures. A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies. Exceptions to the warrant requirement include [*inter alia*] the inventory search exception[.]

***Commonwealth v. Simonson***, 148 A.3d 792, 797 (Pa. Super. 2016) (citations and internal brackets omitted). Critically, this Court has distinguished between inventory searches and automobile searches:

> [a] warrantless inventory search of an automobile is different from a warrantless investigatory search of the same. An inventory search of an automobile is permitted where: (1) the police have lawfully impounded the automobile; and (2) the police have acted in accordance with a reasonable, standard policy of routinely securing and inventorying the contents of the impounded vehicle. A warrantless investigatory search of an automobile requires both a showing of probable cause to search and exigent circumstances.

***Hennigan***, 753 A.2d at 255 (internal citations omitted); ***see also Commonwealth v. Thompson***, 289 A.3d 1104, 1107-10 (Pa. Super. 2023) ("[T]he limited automobile exception is doctrinally distinct from the inventory search exception. [. . .] An inventory search falls under community caretaking and thus does not involve probable cause.") (quotation marks omitted).

The community caretaking doctrine encompasses three specific exceptions to the Fourth Amendment's warrant requirement: (1) the emergency aid exception, (2) the automobile impoundment/inventory exception, and (3) the public servant exception. ***See Commonwealth v.***

---

probable cause, supported by oath or affirmation subscribed to by the affiant.

PA. CONST. Art. I, § 8.

*Livingstone*, 174 A.3d 609, 626 (Pa. 2017). For each of these exceptions, the police must be motivated by a desire to render aid or assistance, rather than the investigation of criminal activity. *Id.* at 627. When a search or seizure is justified by the community caretaking exception, "courts must meticulously consider the facts and carefully apply the exception in a manner that mitigates the risk of abuse." *Id.* at 637 (citation and quotation marks omitted). Police authority to impound vehicles derives from "the police's reasonable community care-taking functions." *Lagenella*, 83 A.3d at 103. "Such functions include removing disabled or damaged vehicles [. . .], impounding automobiles which violate parking ordinances (thereby jeopardizing public safety and efficient traffic flow), and protecting the community's safety." *Id.*

Our Supreme Court has explained that inventory searches serve the following purposes:

> (1) protection of the owner's property while it remains in police custody; (2) protection of the police against claims or disputes over lost or stolen property; (3) protection of the police from potential danger; and (4) assisting the police in determining whether the vehicle was stolen and then abandoned.

*Id.* at 102. The purpose of an inventory search is "not to uncover criminal evidence, but to safeguard items taken into police custody in order to benefit both the police and the defendant." *Id.* Specifically, a warrantless inventory search of a vehicle is permissible only when: (1) the police "have lawfully impounded the automobile, i.e. have lawful custody of the automobile"; and (2) the police "have conducted a reasonable inventory search." *Id.* at 102-03 (citation omitted). An inventory search is reasonable if it is "conducted

pursuant to reasonable standard police procedures and in good faith and not for the sole purpose of investigation." *Id.* at 103. To determine the purpose of a search, the following must be considered: "the scope of the search, the procedure utilized in the search, whether any items of value were in plain view, the reasons for and nature of the custody [of the vehicle], the anticipated length of the custody, and any other facts which the court deems important in its determination." *Hennigan*, 753 A.2d at 256 (citation omitted).

In *Hennigan*, police served a search warrant at a "drug house" and arrested the defendant. *See Hennigan*, 753 A.2d at 249-50. Since the defendant did not live in the area, police impounded his legally parked car and subjected it to an inventory search during which they recovered a gun. *Id.* at 250. The arresting police officer testified that if police could ascertain that the arrestee owns the vehicle, they would take that vehicle into custody. *Id.* at 250-51. This Court found that, notwithstanding the legality of the impoundment, it was insufficient for "the Commonwealth [to present] no evidence that the inventory search took place pursuant to standard police procedures, other than testimony from a police officer that the impoundment was 'routine.'" *Id.* at 260. The Court further noted that the vehicle at issue in that case was parked legally, had no nexus to the crime under investigation, and police could not identify an applicable community caretaking function under the circumstances. *Id.* at 259-60.

In **West**, police arrested the defendant in a parking lot pursuant to an arrest warrant. **See West**, 937 A.2d at 522. The officers then seized the defendant's motorcycle and conducted an inventory search, discovering, *inter alia*, cocaine. **Id.** at 523. At the suppression hearing, the Commonwealth "did not offer testimony explaining the policy and full manner in which the inventory search was conducted." **Id.** at 528-29. Since there was no "testimony showing that the department had in place and employed a standard, reasonable policy when searching the vehicle[,]" this Court determined that the search was unconstitutional where the Commonwealth failed to meet its burden. **Id.** at 529.

In **Brinson**, police stopped the defendants' car for a traffic violation, then detained the defendants for lack of insurance. **See Brinson**, 328 A.3d at 1101. The police towed the vehicle and applied for a search warrant. **Id.** During a subsequent search of the car, officers recovered a firearm with an altered serial number and oxycodone pills. **Id.** at 1102. Notably, the police officers in that case testified to their "authority to tow the vehicle based upon [the defendant]'s lack of insurance[,]" however, that testimony conceded "that towing [wa]s discretionary." **Id.** at 1109 (citation omitted). Further, the police officers admitted that "there was no certain procedure for towing a vehicle." **Id.** (quotation marks omitted). This Court noted that, although the police officers "had the authority to impound the vehicle under the community caretaking function, [they] presented no further evidence or testimony regarding [the department]'s policies regarding tows and impounds for lack of

insurance[.]" *Id.* at 1110. Accordingly, this Court found the evidence inadmissible because "such seizures were discretionary and [. . .] there was no particular policy in place." *Id.* (quotation marks omitted).

In *Commonwealth v. Peak*, 230 A.3d 1220 (Pa. Super. 2020), police approached the defendant after the defendant's vehicle had pulled up to a gas pump. *See id.* at 1222. Upon learning that the defendant was under suspension from driving, the officer advised the defendant that he was not under arrest, but the vehicle would be towed. *Id.* at 1223. The officer testified that he felt it necessary to tow the vehicle because it "imped[ed] the business'[s] ability to conduct business as they would regularly do so." *Id.* The officer testified that he "knew the owner did not want vehicles to remain at the location." *Id.* at 1227. The officer then conducted an inventory search of the vehicle at the gas station, during which he found small bundles of heroin-stamped bags, and subsequently placed the defendant under arrest. *Id.* at 1223. This Court determined that the phrase "in the interest of public safety" encompasses circumstances where a vehicle "is stopped in front of a gas pump, obstructing the business therein." *Id.* at 1227. This Court noted that a car "'illegally' parked at a gas pump" presented at least as much of a safety concern as the "car parked in a 'no parking zone' in *Lagenella*, which was lawfully impounded. *Id.* Accordingly, this Court found that the police had the authority to impound the defendant's car and conduct the inventory search. *Id.* at 1227-28.

In *Commonwealth v. Romesburg*, 2023 WL 4399090 (Pa. Super.,
filed July 7, 2023) (unpublished memorandum decision) (669 WDA 2022), the
defendant crashed his vehicle, rendering it impossible to be driven away. *See*
*id.* at *1.[6] While the defendant was being treated by medical personnel, police
searched his car and found drug paraphernalia. *Id.* at 1-2. Police asked the
defendant to submit to field sobriety tests, after which he admitted to using
drugs. *Id.* at 2. Police then arrested the defendant and called a tow truck to
remove his vehicle. *Id.* According to the officer's testimony, it was the police
department's policy to tow crashed vehicles. *Id.* Although the defendant's
vehicle "sat entirely off the roadway on a grassy area[,]" this Court
determined that police had statutory authority to tow the defendant's vehicle
pursuant to 75 Pa.C.S. § 3352(c)(3).[7] *Id.* at *6-7.

_____

[6] *See* Pa.R.A.P. 126(b) (authorizing citation for persuasive value to non-
precedential decisions filed after May 1, 2019).

[7] Section 3352(c)(3) states:

> (c) **Removal to garage or place of safety.--**Any police officer
> may remove or cause to be removed to the place of business of
> the operator of a wrecker or to a nearby garage or other place of
> safety any vehicle found upon a highway under any of the
> following circumstances:
>
> [. . .]
>
>> (3) The person driving or in control of the vehicle is arrested
>> for an alleged offense for which the officer is required by law
>> to take the person arrested before an issuing authority
>> without unnecessary delay.

*(Footnote Continued Next Page)*

Instantly, the trial court addressed Thompson's claim as follows:

> [Thompson]'s vehicle was properly impounded pursuant to the police's reasonable community care-taking functions. [. . .] It was apparent to the officers that [Thompson] was intoxicated and would not be able to drive his truck away. Either the police were going to have to drive it away or it would have needed to be towed. Therefore, the truck was properly impounded, and the police had lawful custody. Additionally, the inventory search was reasonable. It was conducted pursuant to the written policy of the Lower Merion Police Department, which required an inventory [search be conducted] on all vehicles that are towed [] from a scene. Additionally, once it was determined that the police would be required to remove the vehicle from the scene, an inventory search was necessary to protect themselves against claims of missing property and potential dangers within the vehicle.

Trial Court Opinion, 2/24/25, at 7.

Before engaging in substantive review, we must first determine whether the entirety of Thompson's claim has been preserved for our review. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Here, Thompson's failure to raise his challenge to the search of the backpack at the suppression hearing waives that part of the issue for our review to the extent that it alleges an improper search of that bag as a closed container.[8] *See Peak*, 230 A.3d at 1228 (claim waived if

_____

75 Pa.C.S. § 3352(c)(3). We note that this statute specifically applies to "any vehicle found upon a highway." *Id.* The Vehicle Code defines "highway" to be "[t]he entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." *Id.* at § 102.

[8] Even if not waived, we would conclude Thompson is not entitled to relief where, as discussed below, unlike the inventory search policy in *Wells*, 495 U.S. at 15, the Lower Merion Police Department inventory search policy
*(Footnote Continued Next Page)*

appellant did not raise it before suppression court); *see also*
*Commonwealth v. Little*, 903 A.2d 1269, 1273 (Pa. Super. 2006) ("no new
theories of relief" concerning suppression claim "may be considered on
appeal"). Accordingly, our review is limited to the remaining arguments that
were properly preserved below, which allege that the warrantless inventory
search was unlawful because it occurred prior to Thompson's arrest, and that
it was not conducted reasonably. **See** Memorandum in Support of Defendant's
Motion to Suppress, 8/26/24, at 4-9.

In turning to the merits of Thompson's appeal, the applicable Lower
Merion Police Department policy defines a vehicle in police "custody" as "[a]ny
motor vehicle that is left to the responsibility of [p]olice to secure **either at
the scene or [to be] impounded**." Exhibit C-3, at 1 (emphasis added). The
policy then outlines the following required procedure:

> It **shall be** the responsibility of the investigating officer:
>
> 1. To inventory the contents of any motor vehicle or
>    container that lawfully comes into our custody.
>
> 2. To properly tag all items including the motor vehicle or
>    container for identification.

---

specifies the need to inventory the contents of containers found in vehicles
that come into police custody, **see** Exhibit C-3, at 1-2 ("It shall be the
responsibility of the investigating officer[. . . t]o **inventory the contents of
any** motor vehicle or **container** that lawfully comes into our custody[.]")
(emphasis added), and where we have determined the Lower Merion Police
Department policy of taking into its custody crashed immobile vehicles left on
private property is reasonable, as discussed below.

3. To secure that motor vehicle or container and any valuables found therein so they may be properly returned to the owner.

4. Submit a Supplementary Report upon completion of these tasks.

*Id.* at 1-2 (emphasis added).

At the suppression hearing, Officer Bove testified that the responding police officers initially had a plan for someone to drive the car "off scene," out of the backyard of the private property where a family, including a teenage child, was living. N.T. Suppression Hearing, 9/6/24, at 24-25, 40-41. From this testimony, the suppression court determined that the police correctly invoked the community caretaking doctrine and correctly assessed the circumstances as inappropriate to leave the truck on that private property. *See* Trial Court Opinion, 2/24/25, at 3-4. Further, upon arriving on the scene, Officer Joukhovitski observed that the truck "wasn't able to be driven because when [she] approached the vehicle[,] Mr. Thompson was pressing the gas pedal and the wheel was rotating and not going anywhere, so the car was firmly stuck." N.T. Suppression Hearing, 9/6/24, at 14. Officer Bove corroborated this statement in his testimony that driving the truck out of the private property's rear yard was "not an option" because the truck was not four-wheel drive and the rear passenger tire was losing air, so the vehicle had to be towed. *Id.* at 20, 31-32. Moreover, once the police officers determined that there was no way to move the vehicle, they testified that they had the responsibility to either secure the vehicle at the scene or impound it pursuant to their departmental policy. *Id.* at 20, 23.

The Lower Merion Police Department policy explains that the varied purposes of inventory searches of vehicles and containers that come into police custody are to assure "[t]he protection of the owner's property while it remains in police custody[,]" "[t]he protection of police personnel from potential danger[,]" and "[t]he protection of employees of [the] Department against claims and disputes over lost or stolen property." Exhibit C-3, at 1. These rationales are consistent with reasonable purposes for an inventory search identified by *Lagenella*. *See Lagenella*, 83 A.3d at 102. Like *Peak*, Thompson's vehicle remained on private property without the owner's permission. *See Peak*, 230 A.3d at 1223. We observe that the instant case of a disabled truck stuck in the mud of the backyard of a residential house where a family, including a teenage child, was living is no less of a safety concern than that of a car "illegally" parked at a gas pump. *See id.* at 1227. This case is also comparable to *Romesburg*, where the police determined that the crashed vehicle needed to be towed.[9] *See Romesburg*, 2023 WL

---

[9] In *Romesburg*, this Court declined to comment on whether the tow was for public safety reasons. Instead, *Romesburg* applied Section 3352(c)(3) of the Vehicle Code to authorize police to impound a vehicle when the driver has been arrested. *See Romesburg*, 2023 WL 4399090, at *5; *see also supra*, at n.7.

In the instant case, a residential backyard does not fall under the Vehicle Code's definition of highway. *See* 75 Pa.C.S. § 3352(c)(3). Nevertheless, we find that *Romesburg* is otherwise analogous, especially insofar as it applies community caretaking function principles to vehicles left off the roadway or on private property. *See, e.g.*, *West*, 937 A.2d at 522-23 (in hotel parking lot); *Commonwealth v. Collazo*, 654 A.2d 1174, 1175-77 (Pa. Super. 1995)
*(Footnote Continued Next Page)*

4399090, at *2. The police department policy, as applied to the removal of Thompson's vehicle, was therefore consistent with the police's "reasonable community care-taking function[]" of removing disabled vehicles for community safety. **See Lagenella**, 83 A.3d at 103.

Upon review, we conclude that the suppression court did not err in denying Thompson's motion to suppress and find the record supports its conclusions. We agree with the suppression court that the police lawfully took custody of Thompson's truck pursuant to their community caretaking functions and their reasonable departmental policy, **see id.**; **see also Hennigan**, 753 A.2d at 255, especially insofar as the truck was stuck (and sustained tire damage) and came into police custody. **See** N.T. Suppression Hearing, 9/6/24, at 19-20.

Further, we are satisfied that this case is sufficiently distinguishable from our prior decisions in **Hennigan**, **West**, and **Brinson** given the specificity of the Lower Merion Police Department's policy and the officers' testimonies.

_____

(at park); **Commonwealth v. Ward**, 2018 WL 6073753, *1, *4-5 (Pa. Super., filed Nov. 21 2018) (unpublished memorandum decision) (1851 WDA 2017) (in commercial fast food drive-thru); **Commonwealth v. Shuler**, 2017 WL 6546319, *3-4 (Pa. Super., filed Dec. 22, 2017) (unpublished memorandum decision) (3246 EDA 2014) (at hospital); **Commonwealth v. Dollard**, 2024 WL 749979, *1-4 (Pa. Super., filed Feb. 23, 2024) (unpublished memorandum decision) (2663 EDA 2022) (in gas station parking lot). However, "where the sole issue is the safety of a defendant's legally parked vehicle pending an arrest, police do not have the authority to impound said vehicle absent some reasonable nexus to the alleged crime or to a community care-taking responsibility." **See Hennigan**, 753 A.2d at 259-60.

Indeed, here, Lower Merion police officers do not have discretion in deciding whether to conduct an inventory search when a vehicle comes into police custody. **Cf. Brinson**, 328A.3d at 1110. Unlike in **West**, the Lower Merion Police Department policy specifies how to conduct an inventory search of a vehicle. **See** Exhibit C-3, at 1-2. Officer Bove testified at the suppression hearing, consistent with the dictates of the Lower Merion Police Department policy, that he started conducting the inventory search as Thompson was being escorted to the road for field sobriety tests because the police "knew that [Thompson] was not driving the vehicle away, so [the police] were taking it into custody." N.T. Suppression Hearing, 9/6/24, at 19-20. Further, Officer Bove noted that "whether or not [Thompson] passed [the field sobriety test], [the police] would not let him drive anywhere[,]" even if they were not arresting him, because Thompson was too impaired to drive. **Id.** at 47. Also, as distinguished from **West**, here, Officer Bove testified to the procedure and reasonable standard policy he utilized in conducting his inventory search. Officer Bove explained his inventory search procedure in detail, beyond simply describing it as "routine." **Cf. Hennigan**, 753 A.2d at 260.

Officer Bove testified that his process for an inventory search involved returning small valuable personal items such as a wallet or jewelry to their owners; specifically, he mentioned returning to Thompson the cell phone he found in the vehicle. **See** N.T. Suppression Hearing, 9/6/24, at 25-26. During his search, Officer Bove documented the items he found, removed the gun and marijuana, and prepared an inventory report. **See id.** at 42-45. This

testimony supports the suppression court's finding that the inventory search was "conducted pursuant to the written policy of the Lower Merion Police Department." Trial Court Opinion, 2/24/25, at 7; *see also Yandamuri*, 159 A.3d at 516 ("We are bound by the suppression court's factual findings so long as they are supported by the record"). In any event, in contrast with the decision in *Hennigan*, here, we conclude that the community caretaking doctrine is applicable to this case.[10] Accordingly, Thompson is not entitled to relief on his suppression claim.

_____

[10] Assuming, *arguendo*, that the warrantless inventory search was conducted unreasonably pursuant to the departmental policy, we conclude that the evidence is admissible under the inevitable discovery exception. Any evidence obtained by police through an unlawful search "may only be used against the defendant if [. . .] the evidence in question would inevitably have been discovered without reference to the police error or misconduct." *Commonwealth v. Fulton*, 179 A.3d 475, 489-90 (Pa. 2018) (citations, quotation marks, and brackets omitted); *see also Commonwealth v. Bailey*, 986 A.2d 860, 862 (Pa. Super. 2009) (illegally obtained evidence is allowable "[i]f the prosecution can establish by a preponderance of the evidence that the illegally obtained evidence ultimately or inevitably would have been discovered by lawful means") (brackets and ellipses omitted).

Since the Lower Merion Police Department policy required an inventory search of all vehicles in police custody, including those secured at the scene, the police would have inevitably discovered the challenged evidence pursuant to an inventory search in connection with the securing or removal of the vehicle. *See* Exhibit C-3, at 1 ("motor vehicles or other containers taken into custody are to be properly inventoried"). Similar to *Peak*, Thompson's truck would have been towed in the interest of public safety regardless of whether he was to be arrested. *See Peak*, 230 A.3d at 1227. Further, the facts in *Brinson* are "distinguishable from scenarios where police lawfully arrest the driver of a vehicle and are required to tow the vehicle[.]" *Brinson*, 328 A.3d at 1110 n.14; *see also id.* at 1110. (for doctrine of inevitable discovery to apply, police must demonstrate not only that they **could have** searched vehicle, but

*(Footnote Continued Next Page)*

Upon thoroughly reviewing the certified record for this case, we notice an issue concerning the legality of Thompson's sentence. Though the parties did not address its legality, we may address it *sua sponte*. **See Commonwealth v. Watson**, 228 A.3d 928, 941 (Pa. Super. 2020) (issues relating to legality of sentence may be raised *sua sponte*). Our standard of review of a legality of sentence issue is *de novo* and our scope of review is plenary. **Id.**

Thompson's drug offense in this case was charged as a violation of 35 P.S. § 780-113(a)(16), for knowing or intentional possession of a controlled substance, prior to the rendering of the trial court's verdict. **See** Bills of Information, 5/22/24, at 1. At sentencing, however, the trial court treated the conviction, at the suggestion of the Commonwealth, as a violation of 35 P.S. § 780-113(a)(31), for possession of small amount of marijuana, which has a maximum possible imprisonment term of thirty days under 35 P.S. § 780-113(g). **See** N.T. Sentencing Hearing, 11/25/24, at 2-3) (reflecting the prosecutor indicating an applicable "30-day max" and the court agreeing with that assessment). The court thereafter imposed a flat sentence of thirty days for the drug offense. **See** Order (sentencing), 11/25/24, 1-3; N.T. Sentencing Hearing, 11/25/24, at 10.

---

also that "any policy or procedure in place **would have necessarily** led to an inventory search") (emphasis added).

It appears that the trial court mistakenly sentenced Thompson, at the Commonwealth's suggestion, pursuant to the wrong subsection of 35 P.S. § 780-113. Nevertheless, the most glaring issue arising from this confusion is that the imposition of a flat sentence for the drug offense violates 42 Pa.C.S. § 9756's requirement that, in imposing total confinement, the trial court shall specify a maximum period, as well as a minimum sentence that does not exceed one-half of the maximum. *See* 42 Pa.C.S. § 9756(a), (b)(1).

"[W]e have long concluded that where the trial court violates the Sentencing Code by failing to impose both a minimum and maximum sentence pursuant to 42 Pa.C.S. § 9756(b), the sentence is illegal and must be vacated." ***Commonwealth v. Robinson***, 7 A.3d 868, 870 (Pa. Super. 2010). Since the trial court improperly imposed a flat sentence of thirty days' imprisonment for Thompson's drug offense, we must vacate or correct that part of the judgment of sentence before us. The trial court wished to impose the maximum allowable punishment for a small amount of marijuana possession conviction, therefore, this Court can amend the sentence to ensure that the minimum term is equal to half of the maximum term. ***See Commonwealth v. Duda***, 831 A.2d 728, 733 (Pa. Super. 2003) (appellate court can amend sentence to include a minimum term equal to one-half the maximum sentence where the trial court intended to impose maximum allowable sentence for appellant's conviction). Since the adjustment of this concurrent imprisonment term does not disrupt the overall sentencing scheme, a remand for resentencing is not required. ***See, e.g.***,

*Commonwealth v. Lekka*, 210 A.3d 343, 359 (Pa. Super. 2019) ("In this case, the correction does not upset the sentencing scheme and no further action is required of the sentencing court; therefore remand for resentencing is not warranted.").

Judgment of sentence amended to reflect a fifteen-day minimum imprisonment term as to Count three and affirmed in all other respects. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/3/2025